WILSON *et al. v.* HAFLEY.

(*Knoxville,* September Term, 1949.)

Opinion filed December 17, 1949.

Rehearing Denied February 10, 1950.

KENNETH D. HIGGINS, of Athens, for complainant.

W. E. MICHAEL, of Sweetwater, for defendants.

Mr. Justice Burnett delivered the opinion of the Court.

The question here is: Does a claim filed with the Clerk of the County Court within the time allowed for filing claims against decedent estates, Code, Section 8196.2, become a final and binding obligation of the estate when it is not excepted to by the personal representative within the time allowed?

The Chancellor held, under the authority of *Warfield* v. *Thomas' Estate*, 185 Tenn. 328, 206 S. W. 2d 372, that the filing of the claim, uncontested by the personal representative in the County Court, became final and amounted to an adjudication, and that there being no fraud or mutual mistake in the matter the petitioner here, Hafley, was entitled to recover.

The Court of Appeals reversed primarily for the reason that that court was of the opinion that a mutual mistake of fact had occurred and for this reason a court of equity should allow the executor the right to defend the case on the merits and hear proof and determine

the case on the facts developed. We granted *certiorari* because of a conflict of the courts below in the matter and because we felt that the determination of the Court of Appeals was contrary to two previous holdings of this Court.

Park Wilson qualified, and was issued letters testamentary, as executor of Martha L. Sligar, on March 10, 1945. On March 27, 1945, Hafley filed his claim with the Clerk of the County Court of McMinn County where the estate was being administered. The claim as filed by Hafley is in the following words and figures.

"In The County Court Of McMinn
County, Tennessee:
To Park Wilson, Administrator Of The
Estate Of Martha L. Sligar, Deceased:"

"In this cause comes W. W. Hafley and filed his claim against the estate of Martha L. Sligar in the amount of $500.00 for services rendered to the deceased and her husband during their lifetime, and for taxes paid for them.

"He further states that over a period of four years or more, he made numerous trips to the home of Martha L. Sligar and her husband, who lived close neighbors to him, that he assisted them with putting up their hay and on many occasions helped with feeding and looking after their livestock; that he visited the home many times and was called upon sometimes late at night to assist Martha L. Sligar and her husband, both of whom were advanced in age, with various and sundry household duties and served them in many other ways on the farm. He also states that he paid for them the 1944 City taxes in the amount of $35.00.

"Wherefore, he files this claim against the Administrator of said estate in the amount of $500.00 as his reasonable allowance for personal services rendered and for taxes paid.

"W. W. Hafley

"Sworn to and subscribed before me, this March 27, 1945.
Adaline R. McKenzie

Notary Public
"My commission expires:"

The administration of the estate was closed and Wilson discharged as executor on March 30, 1946 and the estate distributed to Wilson and his wife who were the distributees named in the will. It will be noted that the estate was closed and distributed about ten days before the expiration of thirteen months (the then period provided by the Act for closing the estate). No exceptions or protests were ever made to the claim. The County Court Clerk made the statement to the executor, Wilson, that no claims had been filed against the estate, and as a result of this statement, Wilson's inquiries from the Clerk and his attorney's inquiries from the Clerk whether or not any claims had been filed against the estate, the estate was closed and distributed as shown above.

Some few days prior to the qualification of Wilson as executor under the will another party qualified as administrator of Martha Sligar in this same court. What happened to the administration under that qualification is not shown by the record. Suffice it to say that the claim herein filed was filed in the estate wherein the will was probated and Wilson qualified as executor. It is apparent from the record that the Clerk in indexing this

matter indexed it in the name of Park Wilson, Executor, instead of in the name of Sligar estate, or Estate of Martha Sligar. It is apparently for this reason that the Clerk overlooked the fact that the claim herein sued upon had been duly filed.

The claim of Hafley not being paid, suit in the Chancery Court was instituted by Hafley on November 30, 1946, against Wilson as Executor and against Wilson and his wife, individually as sole beneficiaries under the will of Martha L. Sligar, deceased.

In due season Wilson and his wife personally and officially filed what they denominate as a "Plea in abatement" alleging in substance and effect that the judgment of the County Court approving the report and final settlement of the Executor and discharging him and his bondsmen constituted a final and complete adjudication by a court of competent jurisdiction barring Hafley's cause of action.

It was further alleged in the plea filed that the claim as filed in the estate was a nullity upon its face because (1) it did not contain an itemized statement of the account; (2) was not verified as required by law; (3) was not filed in duplicate as required by the statute.

Oral evidence was heard on the issues thus presented but no bill of exceptions was preserved on the evidence thus heard. The technical record of this proceeding though does show that the Chancellor decreed that the complainant's claim was filed in duplicate with the County Court Clerk within the time allowed and that a copy of the claim was mailed to the Executor, but that the Executor did not receive a notice of the filing of the claim and accordingly reported that none had been filed. It was also found that the claim had not

been verified in the form prescribed by statute, but since no exceptions had been filed to the claim, that the complainant had the right to assume that there was no objection to the form in which it was filed. The questions thus presented by the so-called "Plea in abatement", have been well, fully and ably determined in the opinion of the Court of Appeals as follows:

"In the absence of a bill of exceptions, we must conclusively presume that every fact admissible under the pleadings was found or should have been found favorable to appellee. *Fletcher* v. *Russell,* 27 Tenn. App., 44, 177 S. W. 2d 854. Questions of law appearing upon the face of the record, though binding after the lapse of thirty days and not subject to change by the subsequent Chancellor who tried the case more than thirty days after the overruling of the plea in abatement, are open for review here on defendants' broad appeal. *Third National Bank, etc.* v. *Carver, et al.,* Tenn. App., 218 S. W. 2d 66.

"As we have stated, the former Chancellor found under the proof that a claim was filed against the Executor in duplicate within the time allowed by statute. Under the conclusive presumption of correctness attending these findings, we must assume that, as found, the claim was filed against the Executor and not against an Administrator who had qualified before the probation of the will and that it was filed in duplicate.

"As to the questions of law, we think they were correctly determined by the former Chancellor on the record which was presented to him on the initial pleadings. The claim was filed within the time allowed by statute. The fact that it was not itemized and verified in the language of the statute did not make it void *ipso facto*.

As well said by JUDGE FELTS in *Cooper's Estate* v. *Keathley*, 27 Tenn. App. 7, 15, 177 S. W. 2d 356 the statute contemplates that claims should be set out in written form as an informal statement of the cause of action, the intent being to afford a simple, inexpensive, and expeditious remedy for administration of decedent estates. It should be liberally construed to advance the remedy and dispense with formal pleadings. It was there held that a claim defectively stated or verified is not to be treated as a nullity but may be amended after the running of the time within which claims must be filed and the amendment will then relate back to the original claim and be considered as filed within time.

In this case, as pointed out by counsel, no amendment has been tendered. The claimant, however, had a right to assume that his claim was being treated as sufficient in form until exceptions were filed. The place for filing exceptions was in the County Court and none were filed there though, as will appear, the failure to file exceptions was not due to any fault on the part of the Executor. Doubtless, if exceptions had been filed attacking the form of the claim, an amendment would have been tendered and, since it was not due to any fault of the claimant that the questions now made were not made in the County Court where they could have been remedied by amendment, we do not think his claim should be adjudged invalid for defects of form merely. The bill in this case shows *prima facie* a valid indebtedness against the estate none of which, it is alleged, has been paid.''

After the determination of the matters above, an answer was filed to the bill and the Chancellor then decreed as set out in the beginning of this opinion. His holding apparently being that the case should proceed

to a hearing on the single issue of whether or not the Executor's failure to except in the County Court was brought about by the fraud of the claimant. It was held and concurred in by the Court of Appeals that there was no fraud in filing this claim.

 The respondents insist that the judgment of the County Court discharging the Executor is *res adjudicata* as to the complainant's claim notwithstanding the failure of the Clerk to notify Hafley to be present at the hearing so that he might resist his application for a discharge. We think the Executor wrong in this insistence. When the claim as filed by Hafley was unexcepted to it had the force of a binding adjudication between the parties and there was nothing left for Hafley to do. He had a perfect right to assume, in the absence of some protest or exception to his claim, that it would be allowed as filed. The Executor obtained a discharge on a mistaken statement of the Clerk to him that no claim had been filed. This is not binding on Hafley. It was the obligation of the Executor to make a search of the records and satisfy himself that no claims had been filed herein. He certainly cannot be relieved by merely taking the word of the Clerk or a deputy clerk in the office. The records are there for him to see and he has eminent counsel who could likewise check on these records before any discharge was granted and distribution made.

"These non-claim statutes are jurisdictional and unless complied with the Court cannot allow the claim." 21 Am. Jur., page 590.

Our non-claim statute was first passed in 1939 and is Chapter 175 of the Public Acts of that year. The Act has since been amended. These amendments were made subsequent to the happenings in this case and are not

applicable here. On the identical question here presented this Court said in *Miller* v. *Morelock,* 185 Tenn. 466, 469, 206 S. W. 2d 427, that:

"Section 3 of said Chapter 175 requires the personal representative or any person interested in the distribution of the estate to file written exceptions to any claim which they dispute within thirty days after twelve months from the date of notice to creditors. This Section 3 further provides that such exceptions may not be filed after the expiration of said thirty day period. The effect of this is to require payment of a claim *prima facie* valid if not excepted to within this thirty days."

And again this Court in *Warfield* v. *Thomas' Estate, supra* [185 Tenn. 328, 206 S. W. 2d 374], said:

"Should this uncontested claim be regarded as final against the estate? We think it is so adjudged by force of the statute when no exceptions are filed by the personal representative, or other interested parties."

The Court then quotes with approval and adopts a statement from Higgins' Administration of Estates in Tennessee, Section 126-a, p. 97.

The Court then goes on to say, in effect, that by the filing of the claim with no exceptions thereto, that the "claim stands as if formally adjudicated."

█ The filing of the claim herein against the estate amounted to a demand for payment and vested the County Court of McMinn County with jurisdiction to allow payment. The filing of this claim was the equivalent to the commencement of an action. Of course the mere filing of the claim does not establish the validity of the claim but it puts the representatives of the estate on notice and they must make some exceptions thereto. We have quoted in full the claim as filed in this case. It is

perfectly obvious that this claim presents a *prima facie* valid claim. Of course if the claim showed on its face that it was utterly void then no exceptions would necessarily have to be taken and the estate would not be bound thereby.

We cannot find any basis for what is normally known as a mutual mistake under the facts of this record. The fact that the Clerk failed to tell the Executor that the claim had been filed and the fact that the Executor failed to properly file these claims certainly cannot be charged to Hafley. Hafley filed his claim in due season. The estate was closed prior to the end of thirteen months and closed on the statement of the Clerk that no claims had been filed. This state of facts cannot be considered as mutual mistake as between the Executor and the petitioner here. It seems to us that for a mutual mistake to have been made it must have been made between the two parties concerned who participate in the conduct which is the basis for the mistake. In order for there to be a mutual mistake there must be some mutuality in the mistake, we find none here. We find in the case of *In re Woods*, 133 Fla. 730, 183 So. 10, 14, 117 A.L.R. 1202, 1207, some language of that court which is applicable here, and is as follows:

"It is axiomatic that 'hard cases make bad law.' When, by some failure to act within the time, or in the manner, expressly and mandatorily required by law, a party loses his right to enforce an otherwise just claim (as the one here involved may be for aught that appears), and the courts, in their desire to award 'natural' or 'substantial justice,' strain themselves beyond the bounds of clear and reasonable interpretation of the law as written, in their efforts to save such party from the

injurious consequences of his own disregard of the law, then the truth of the axiom is proven. Which brings to mind Bassanio's appeal to Portia: 'I beseech you, wrest once the law to your authority; to do a great right, do a little wrong, and curb this cruel devil of his will:' and Portia's familiar but memorable reply: 'It must not be; there is no power in Venice can alter a decree established; 'twill be recorded for a precedent, and many an error, by the same example, will rush into the State. It cannot be.' "

## On Petition to Rehear.

A frank, courteous and dignified petition to rehear has been filed herein. The petition raises only one question, to wit: "That the claim as filed was completely and utterly void and unenforceable because it showed on its face that it was a claim against the estate of Wiley Sligar, deceased, who was the husband of Martha L. Sligar, and who preceded her in death by only three (3) weeks."

An able argument is made in support of this contention. We cannot agree. The claim as filed is quoted in our original opinion. No exceptions were filed to this claim. On its face the claim is against Mrs. Sligar. There is nothing to negative the fact that it is her obligation. We must assume, nothing else appearing, that the basis of this claim was against her—relying on her and her credit and not that of her husband. It is perfectly true that ordinarily the husband is liable for the things set forth in this claim. A party may elect to rely on the wife and not the husband. The claim being filed against the wife's estate, nothing else appearing, we must assume the credit was lent her and not

the husband. In 26 Am. Jur., p. 949, it is said: "The general rule is that insofar as a married woman can contract under the Married Women's Acts, she can contract liability for support, necessaries, and household supplies and goods generally, furnished her, her family, or particular members thereof, including her husband, although her husband continues under duty to support her and under liability in a proper case for necessaries furnished her."

This general rule is applicable in this State. On the face of this claim it is her obligation. The Court of Appeals found that "the bill in this case shows *prima facie* a valid indebtedness against the estate none of which, it is alleged, has been paid." We agree with this statement.

For the reasons stated we are constrained to deny the petition.

All concur.