**Kathy Smith ATCHLEY**

v.

**Allen E. ATCHLEY.**

Court of Appeals of Tennessee,
Eastern Section.

Dec. 21, 1978.

Certiorari Denied by Supreme Court
July 30, 1979.

## OPINION

GODDARD, Judge.

This is a suit for divorce which raises significant questions of *res judicata* and prior suit pending. On July 18, 1977, Kathy Smith Atchley, Plaintiff-Appellee, filed this suit against Allen E. Atchley, Defendant-Appellant, seeking a divorce and custody of their minor child, Allen Atchley, Jr. In her complaint she alleged that she and her child "are citizens and residents of Greene County, Tennessee, and have been for six months next preceding the filing of this complaint." The Defendant appeared specially to contest jurisdiction by a motion to dismiss on the grounds that, first, there was a prior suit pending in South Carolina, and second, that it was *res judicata* that the Plaintiff was a domiciliary of South Carolina, at least through June 17, 1977. The Chancellor initially granted the motion to dismiss until the divorce action which the Defendant had previously filed in Richland County, South Carolina, was concluded. Upon a motion to reconsider the Chancellor, apparently concerned that the Defendant would keep the South Carolina proceeding in abeyance indefinitely, ordered that the Plaintiff would be allowed to pursue her divorce unless the Defendant's South Carolina suit was concluded within 30 days after October 24, 1977. The South Carolina divorce was not promptly concluded, and one day after the 30-day period the Plaintiff was granted a default judgment, awarding her an absolute divorce and custody of the minor child.

It is from that judgment which the Defendant has appealed and assigned error. We shall not undertake to reply to the assignments of error *seriatim,* but prefer to go to what we consider the determinative questions. Before doing so, we will outline the circumstances and proceedings which gave rise to this appeal.

The Plaintiff and Defendant were married on December 20, 1974, in Richland County, South Carolina. One child was born of this marriage, Allen Atchley, Jr., who was about 15 months old at the time of the filing of this complaint. The parties resided together in Richland County, South

H. R. Silvers, Greeneville, for appellant.

Fred M. Hartman, Greeneville, for appellee.

Carolina, until November 17, 1976, when it is undisputed that the Plaintiff left their home and took her baby with her. On March 24, 1977, the Defendant instituted a suit for divorce in Richland County, South Carolina, which the Plaintiff never properly answered. Then, on May 26, 1977, the Defendant filed a civil suit against the Plaintiff in the Richland County Court for the wrongful abduction of his child and prayed that the Court issue an injunction requiring the Plaintiff to return the child to South Carolina until final custody of the child was awarded. The Plaintiff, by a motion to dismiss, appeared specially to contest jurisdiction, alleging by affidavit that she and the child were residents of Greene County, Tennessee, and had been since early January 1977. The South Carolina Court then proceeded by way of injunction to grant the father equal temporary custody of the child prior to the time a divorce and final custody were awarded. The judgment of the Richland County Court was not appealed and became final.

The Plaintiff did not appear in either of the South Carolina actions, except the above-mentioned special appearance to contest jurisdiction which was decided adversely to her. Instead of obeying the South Carolina injunction to return the child and share equal custody, she filed this action for divorce in Greene County, Tennessee, on July 18, 1977. Meanwhile, in South Carolina, the Defendant's original action for divorce and his action for wrongful abduction of the infant were combined in the Richland County Family Court pursuant to the creation of the Family Court System under South Carolina's Judicial Reform Act of 1977. On August 12, 1977, the Richland County Family Court issued a restraining order which purported to restrain Kathy Atchley from prosecuting her divorce action in Greene County, Tennessee, which order she refused to obey.

As previously noted, the Chancellor below dismissed the Plaintiff's action; then, on a motion to reconsider stayed the action for 30 days, giving the Defendant an opportunity to conclude his prior divorce suit in South Carolina. On November 25, 1977, the Chancellor gave the Plaintiff a default judgment for absolute divorce and custody of the child when the Defendant failed to conclude his divorce within the prescribed time. Thereafter, on January 27, 1978, the Defendant was granted a divorce and custody of the child in the South Carolina action. The Defendant therefore complains that the above action of the Chancellor does not give *res judicata* effect to the South Carolina determination of the Plaintiff's residency, and that the suit should have been permanently dismissed because of the prior suit pending in South Carolina.

■ We are of the opinion that the first issue for consideration is whether Tennessee must give full faith and credit to the June 23, 1977, South Carolina determination that the Plaintiff's residency and domicile was South Carolina and not Tennessee. Article IV, Section I of the United States Constitution requires that the judicial proceedings in each state shall be given full faith and credit in the courts of every other state. This constitutional provision requires that the common-law doctrine of *res judicata* be applied in one state to a judgment rendered in another state to the same extent that it applied in the state of its rendition. We quote with approval from 47 Am.Jur.2d, Judgments § 1226:

The effect of the full faith and credit clause of the United States Constitution, and of the Act of Congress implementing it, is to make the local common-law doctrine of res judicata a part of the national jurisprudence and operative throughout the federal system, by requiring that the doctrine of res judicata be applied in one state to a judgment rendered in another state to the same extent as it is applied in the state of its rendition. Hence, the doctrine of res judicata may be applied to a judgment rendered in one state where the action in the second state involves the same subject matter and cause of action, or the same issues determined in the former action. In the former case, the judgment rendered in the one state operates to bar further prosecution of the same

cause of action in another state; in the latter case, it operates to bar a second determination of the same issues in another state. In the latter respect, it has been specifically held that the collateral estoppel division of res judicata is included within the full faith and credit mandate.

If full faith and credit applied then Tennessee must give *res judicata* effect to the judgment of June 23, 1977. *Res judicata,* of course, includes the principle of collateral estoppel which requires that any issue actually litigated and determined in the suit to which *res judicata* applies may not be re-litigated in a later action. *Booth v. Kirk,* 53 Tenn.App. 139, 381 S.W.2d 312 (1963); *Cline v. Cline,* 37 Tenn.App. 696, 270 S.W.2d 499 (1954).

■ The present scenario of divorce and custody proceedings being instituted in separate jurisdictions by estranged spouses is quite common. Article IV, Section I does not require a state to give full faith and credit to a judgment which is void for lack of jurisdiction. *Williams v. North Carolina,* 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945). In *Hamm v. Hamm,* 30 Tenn.App. 122, 204 S.W.2d 113 (1947), this Court, citing *Williams v. North Carolina,* supra, recognized that the courts of one state could decline to recognize a decree of divorce rendered in another state where, contrary to the findings of the latter state, the courts of the former state find that the plaintiff in the divorce suit had not acquired a domicile in the divorce forum. However, *Davis v. Davis,* 305 U.S. 32, 40, 59 S.Ct. 3, 6, 83 L.Ed. 26 (1938), held that where the parties to a divorce proceeding both appear and the issue of domicile is specifically contested another state or federal court must give full faith and credit to that determination. The Supreme Court said:

As to petitioner's domicil for divorce and his standing to invoke jurisdiction of the Virginia court, its finding that he was a bona fide resident of that State for the required time is binding upon respondent in the courts of the District. She may

not say that he was not entitled to sue for divorce in the state court, for she appeared there and by plea put in issue his allegation as to domicil, introduced evidence to show it false, took exceptions to the commissioner's report, and sought to have the court sustain them and uphold her plea. Plainly, the determination of the decree upon that point is effective for all purposes in this litigation. *Baldwin v. Traveling Men's Ass'n,* 283 U.S. 522, 525, 526, 51 S.Ct. 517, 518, 75 L.Ed. 1244.

The rule of law established in *Davis,* supra, is affirmed in *Cook v. Cook,* 342 U.S. 126, 72 S.Ct. 157, 96 L.Ed. 146 (1951) and *Sherrer v. Sherrer,* 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429 (1948).

Finally, in *Durfee v. Duke,* 375 U.S. 106, 111, 84 S.Ct. 242, 245, 11 L.Ed.2d 186 (1963), the Court summarized the rule:

However, while it is established that a court in one State, when asked to give effect to the judgment of a court in another State, may constitutionally inquire into the foreign court's jurisdiction to render that judgment, the modern decisions of this Court have carefully delineated the permissible scope of such an inquiry. From these decisions there emerges the general rule that a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment.

■ Applying the law to the present suit, we hold that the South Carolina judgment of June 23, 1977, which found that the Plaintiff and her son were residents of South Carolina, is entitled to full faith and credit in Tennessee. The Plaintiff appeared specially and litigated that issue. She is bound thereby and is collaterally estopped to assert that her residency was Tennessee during the same period. However, while it may be said that the South Carolina judgment of June 23, 1977, conclusively established that the wife's and child's domiciliary was South Carolina until that date, it cannot be said that the adjudication

of the domicile question during that period is fully dispositive of the issues before us.

■ A review of the pleadings—no bill of exceptions was perfected—discloses that a suit for divorce was filed on July 18 alleging a specific act of cruel and inhuman treatment occurring in Tennessee on July 17. And, of course, if the Plaintiff became a domiciliary of Tennessee between June 23 and July 18 that act would confer jurisdiction upon the Tennessee Court regardless of an allegation of residence for six months pursuant to T.C.A. 36–803. In our disposition we will presume that the Chancellor was aware of the state of the law as above set out relative to collateral estoppel, and in the absence of a bill of exceptions we must also presume under our case law that the proof sustains his decree: *Wilson v. Hafley,* 189 Tenn. 598, 226 S.W.2d 308 (1949); *Kyritsis v. Vieron,* 53 Tenn.App. 336, 382 S.W.2d 553 (1964). Therefore, despite the *res judicata* effect of the South Carolina judgment of June 23, 1977, we find that, with respect to that issue, proper jurisdiction was asserted by the Court below.

Two issues remain. First, did the former divorce suit pending in South Carolina deprive the Trial Court of jurisdiction to award a divorce? And second, if not, did the subsequently rendered South Carolina judgment become *res judicata,* requiring full faith and credit, simply because there was a motion to rehear pending in the Tennessee Court with regard to the previously rendered Tennessee decree?

■ As to an action *in personam* or transitory, the prior suit pending issue appears to be settled in this state. Tennessee courts are not bound to stay a proceeding simply because a similar action is pending in another state. The rule is in this type case that the pendency of a suit in a foreign court cannot be pleaded in abatement or in bar to a suit in Tennessee on the same matter. *Lockwood & Co. v. Nye,* 32 Tenn. 515 (1852); *Stoll v. U. S. Fidelity & Guaranty Co.,* 10 Tenn.App. 539 (1929); 19 A.L. R.2d 301, 316. Another statement of the rule can be found in *Hubbs v. Nichols,* 201 Tenn. 304, 308, 298 S.W.2d 801, 803 (1956):

"In the application of the doctrine of 'another action pending,' each state is regarded as foreign to every other state; and hence, the pendency of an action in personam, or transitory action, in one state cannot, as a general rule, be pleaded in abatement of an action subsequently commenced in another state between the same parties for the same cause of action," citing many cases. 1 C.J.S. Abatement and Revival § 65, p. 98.

See also: *Cockburn v. Howard Johnson, Inc.,* 215 Tenn. 254, 385 S.W.2d 101 (1964).

As to actions *in rem* or *quasi in rem* on the other hand the following distinction was made in *Hubbs* (201 Tenn. at 310, 298 S.W.2d at 803):

[*In rem* or *quasi in rem*] cases are governed by a different rule because when one court takes into its possession "a specific thing, that res is as much withdrawn from the judicial power of the other, as if it had been carried physically into a different territorial sovereignty." *Kline v. Burke Construction Company,* supra, 260 U.S. 226, 43 S.Ct. 79, 81, 67 L.Ed. 226, 24 A.L.R. at page 1081.

■ However, we are of the opinion that a suit for divorce should not be mechanically classified as an action *in personam, in rem,* or *quasi in rem.* We acknowledge that an arguably contrary approach has been taken by the Western Section of this Court in *Hamm v. Hamm,* supra, but we do not find that case controlling in a discussion of prior suit pending since *Hamm* was addressing the validity of substituted service by publication. A suit for divorce is not merely an action *in personam,* 24 Am.Jur.2d. Divorce and Separation § 245, page 400, and "in so far as it seeks to affect the marital relation of the parties, [it] is *in rem,* or at least '*quasi in rem*' because the object is determination of status." Nelson, Divorce and Annulment, 2nd Edition, § 1.04, page 11. See also: 27A C.J.S. Divorce § 68 pages 236–37.

Another Court, in the case of *Perlstein v. Perlstein,* 152 Conn. 152, 204 A.2d 909, 911 (1964), likewise hesitated to pigeonhole mar-

ital status as having one jurisdictional attribute or another, and said.

> [T]he terms *"in rem"* and *"in personam"* are not apt in describing the character of an action seeking to affect marital status. Such an action is neither an action merely *in personam* nor a true action *in rem*. In the constitutional sense it requires, in the forum state, the domicil of at least one of the parties to the marriage. In the determination of jurisdiction to render a decree affecting the marriage status, the search must be for a domicil, not for a status or *res*. *Williams v. North Carolina,* 317 U.S. 287, 297, 63 S.Ct. 207, 87 L.Ed. 279. Manifestly, domicil cannot be affected by the type of action instituted.
>
> Moreover, the status of marriage is an intangible *res*, entirely different from the tangible *res* of real estate or personal property within the jurisdiction upon which a true *in rem* action can be based as in cases such as *Harris v. Weed,* 89 Conn. 214, 221, 93 A. 232, or a *quasi in rem* action as in cases such as *Pezas v. Pezas,* 151 Conn. 611, 614, 201 A.2d 192. Thus, if the parties are domiciled in separate states, jurisdiction over the marriage status exists in each state, and under the *"res"* theory, the *res* necessarily exists in each state. The *res* is not, nor can it be, independently ascertainable as such, apart from domicil. The existence of the status or *"res"* in the forum state stems solely from the fact that the domicil of at least one party to the marriage is in that state. *Rice v. Rice,* 134 Conn. 440, 445, 58 A.2d 523, aff'd, 336 U.S. 674, 69 S.Ct. 751, 93 L.Ed. 957; *Cook v. Cook,* 342 U.S. 126, 127, 72 S.Ct. 157, 96 L.Ed. 146; note, 96 L.Ed. 152, and earlier annotations therein referred to. If domicil exists in a state, jurisdiction to affect the status of marriage exists in that state, regardless of whether the status does or does not fit into the classic concept of a *"res."* See *Williams v. North Carolina,* supra.

A divorce action, therefore, for purposes of this discussion may logically be said to possess all of these jurisdictional attributes. As analogous evidence of this conclusion is the opinion in *Harris v. Turner,* 329 F.2d 918, 922 (6th Cir. 1964), wherein the Court said:

> [A] divorce action is statutory and is not a proceeding in equity in the traditional sense. As said by the Supreme Court of Tennessee, speaking through the late Chief Justice Grafton Green in *Lingner v. Lingner,* 165 Tenn. 525, 530, 56 S.W.2d 749, 751: "Although a divorce suit is in the nature of a suit in equity * * * nevertheless a divorce suit is *sui generis.* The procedure is largely controlled by statute. Pleading and practice in divorce cases, as governed by statute, differ in many particulars from pleading and practice in equity cases generally. * * * 'such cases stand upon grounds peculiar to themselves, and do not fall within the ordinary rules governing chancery proceedings.' *Hackney v. Hackney,* 28 Tenn. (9 Humph.) 450."

More recently Justice Brock commented on the nature of divorce actions in the case of *Chastain v. Chastain,* 559 S.W.2d 933, 934 (Tenn.1977):

> Although some of our cases contain language to the effect that divorce cases are to be "tried as equity cases" or "according to the forms of chancery," the substantive law governing divorce in Tennessee is purely statutory; there is no common law of divorce. Both grounds for divorce and defenses against divorce actions are statutory. See *Perrin v. Perrin,* 201 Tenn. 354, 299 S.W.2d 19 (1957); *Mount v. Mount,* 46 Tenn.App. 30, 326 S.W.2d 493 (1959).

From the foregoing analysis it appears to this Court that divorce should be viewed as a unique action in the law. Thus, the general rule with respect to the pendency of a suit in a foreign court cannot be rigidly applied on the basis of the jurisdictional nature of the action.

Cases from other jurisdictions have impliedly recognized the distinct nature of divorce actions by creating an independent rule which can be found at 24 Am.Jur.2d, Divorce and Separation § 188, p. 346:

> In accord with the general rules concerning abatement for another action pend-

ing, it is held that the pendency of a divorce action in one court may require the abatement of a second divorce action in a different court of the same jurisdiction, but that the pendency of an action for a divorce or separation in one state will not require the abatement of an action for a divorce subsequently brought in another state.

See also the cases collected at 19 A.L.R.2d 301, 316. The application of this rule is left to the sound discretion of the trial judge. 24 Am.Jur.2d at p. 347. Moreover, "[T]he right . . . to stay . . . is one discretionary with the court of the forum, and its exercise or refusal to exercise cannot ordinarily be made the ground for an error unless abuse of discretion is found under the circumstances." 19 A.L.R.2d 301, 306. We approve of the foregoing rule and think it should be applied in cases such as divorce where the *res* may be found in different states at the domicile of either party.

As set out above, the Chancellor below first dismissed the wife's divorce suit pending the outcome in the South Carolina Court. Upon reconsideration, however, the Chancellor was of the opinion that unless this state allowed suit to be brought within certain time limitations the husband "could thwart . . . a dissolution of the marriage merely by the device of never bringing the South Carolina case to trial." The facts reveal that the Defendant failed to conclude his suit within eight months before the Chancellor's grant of a default judgment and final decree. We cannot say that the Chancellor's actions under the circumstances constituted an abuse of discretion.

Defendant also insists that the South Carolina divorce decree, even though rendered subsequent to the Tennessee decree, should be given *res judicata* effect because of the pendency of a motion to rehear the decree in Tennessee. We first note that this was not a ground set out in the petition to rehear, nor was the petition amended to assert it when the South Carolina decree was rendered. Thus, since this theory was not advanced at the trial level, we cannot consider it here on appeal. *Brookside Mills v. Moulton,* 55 Tenn.App. 643, 404 S.W.2d 258 (1965); *Nashville Gas & Heating Co. v. Phillips,* 17 Tenn.App. 648, 69 S.W.2d 914 (1933). Furthermore, we are of the opinion that a motion to rehear in no way affects the finality of a judgment unless that judgment is subsequently overturned. To hold otherwise would produce the anomalous result of giving *res judicata* effect to a subsequently rendered judgment even though the prior judgment is never modified. We cannot undertake to so confuse the doctrine of *res judicata* in this state.

In conclusion, we have not overlooked Appellee's motion suggesting a diminution of the record. The matters omitted—a motion, response, memorandum opinion and order—were filed after the appeal in this case was perfected and therefore are not properly a part of the record on appeal.

The assignments of error are overruled and the Trial Court affirmed. The cause is remanded to the Chancery Court for Greene County for such further proceedings as may be necessary. The costs of appeal are adjudged against the Defendant and his sureties.

PARROTT, P. J. (E.S.) and FRANKS, J., concur.