**Lloyd HOLLINGSWORTH, Administrator of the Estate of Gary Hollingsworth, Deceased, Plaintiff–Appellee,**

v.

**SAFECO INSURANCE COMPANIES, Defendant–Appellant.**

Court of Appeals of Tennessee, Western Section, at Jackson.

July 18, 1988.

Affirmed by Supreme Court Nov. 20, 1989.

Clyde W. Watson, Camden, for plaintiff-appellee.

Gary K. Smith, Memphis, for defendant-appellant.

CRAWFORD, Judge.

This appeal involves a suit on a fire insurance policy covering a dwelling. The insured-plaintiff, Lloyd Hollingsworth, Administrator of the Estate of Gary Hollingsworth, deceased, filed his complaint against the insuror-defendant, Safeco Insurance Companies, and alleged that the property insured was totally destroyed by fire on December 8, 1984. Defendant Safeco's answer denied that the house was totally destroyed but avers that the insured was entitled only to payment for partial loss under the terms of the policy. The only issue raised by the pleadings was whether damage to the insured structure constituted a total or a partial loss.

The record contains no transcript or statement of the evidence, but the parties stipulated to a "Statement of Proceedings" which we quote in part as follows:

This cause came to be heard on the 5th day of October, 1987, before the Honorable Walton West, Chancellor of the Chancery Court of Henry County, Tennessee. At issue was whether a house owned by Gary Hollingsworth, deceased, and insured by Defendant, Safeco Insurance Companies, was rendered a total or partial loss as a result of a fire which occurred on December 8, 1984.

Upon hearing expert testimony and arguments presented by counsel for the respective parties, the Chancellor specifically made the following findings of fact: (1) although the house was insured for $45,000.00, the cost to repair the house would be between $31,000.00 and $32,000.00 whereas a completely new house could be built for $35,000.00. (2) under the "identity" test, the house had not lost its identity and specific character as a building, nor had it become so far disintegrated that it could not properly be designated as a building.

The Chancellor then chose to apply the "prudent man" test to determine whether or not there was a total loss. Applying this test the Chancellor found:

(1) under the "prudent man" test, the house in question must be declared a total loss because a prudent man would not repair the house for $31,000.00 or $32,000.00 when a comparable new structure can be built for $35,000.00. (2) in accordance with the valued policy law in the State of Tennessee, the Defendant, Safeco Insurance Companies, is liable to the Plaintiff in the amount of the policy limits of $45,000.00, less the amount of $30,266.88, heretofore paid by the Defendant to the Plaintiff and which amount has been held in escrow. (3) the Defendant, Safeco Insurance Companies, should be assessed pre-judgment interest on the unpaid balance of $14,773.12, as and from 12/8/84.

The trial court entered judgment for plaintiff against defendant Safeco for the policy limits of $45,000.00 plus prejudgment interest from December 8, 1984, in the amount of $14,773.12. Safeco has appealed and presents two issues for review.

The first issue for review is:

1. Did the chancellor err in refusing to apply the "identity" test in determining whether the loss was deemed total or partial?

Although at first blush it would appear that whether a fire loss is total or partial is a simple proposition, the cases illustrate that the determination can be a perplexing problem for the courts. Various standards or tests have been developed by the courts as guidelines for the ultimate determination. 44 Am.Jur.2d *Insurance*, § 1498 (1982) states:

§ 1498. Generally; what constitutes total loss.

The cases agree that insurance of a building is upon the building and not on the materials which compose it, and that the total destruction of a building within the meaning of an insurance policy means its complete destruction as a building, but not necessarily the absolute extinction of all its materials, or even that no part of it can be left standing.

But to what extent a building must be destroyed in order to be a total loss is a question on which the courts are divided. Some courts hold that if the building loses its identity and specific character by fire, although a large part of the materials or component parts are left standing, it is a "total destruction" within the meaning of the policy. Other courts take the position that there cannot be a total loss so long as the remnant of the structure standing is reasonably adapted for use as a basis upon which to restore the building to the condition it was in before the fire; and that whether it is so adapted depends upon whether a reasonably prudent owner, uninsured, desiring such a structure as the one in question was before the fire, would in proceeding to restore it to its original condition utilize the remnant thereof as such a basis. Under the latter view, the remnant must have formed a substantial part of the building.

In *Laurenzi v. Atlas Insurance Co.*, 131 Tenn. 644, 176 S.W. 1022 (1915), the Court adopted the "identity" test and Safeco asserts that under this test the trial court's finding that the "house had not lost its identity and specific character as a building, nor had it become so far disintegrated that it could not properly be designated as a building" precluded the trial court from holding that the dwelling in question was a total loss. In *Laurenzi*, the Court said:

> Was there a total loss? The roof of the building, a wooden structure, was wholly destroyed; likewise all of the walls except on one side, and part of the front porch; but these were so badly burned in places that the lumber in them was not worth the labor of rescuing and removing. However, the walls standing were considered so dangerous by the city authorities that they were required to be taken down. The floor remained uninjured, except that a large hole was burned through it in one place. The brick foundation on which the structure stood was unimpaired. Since, under these facts, the identity and specific character of the structure as a building were obliterated, we think the loss was total,

although the parts last referred to remained unconsumed.

131 Tenn. at 663, 176 S.W. at 1026.

In the case before us, the trial court made no specific findings of fact as to the nature and extent of the particular damage to the building. As we have heretofore noted, the record on appeal contains no transcript or statement of the evidence, therefore we must conclusively presume the correctness of the trial court's finding that the "house had not lost its identity and specific character as a building, nor had it become so far disintegrated that it could not properly be designated as a building." *See Wilson v. Hafley*, 189 Tenn. 598, 226 S.W.2d 308 (1949), *Kyritsis v. Vieron*, 53 Tenn.App. 336, 382 S.W.2d 553 (1964).

Coupled with the trial court's finding that the dwelling maintained its character as a building, the trial court found that the remaining part of the building had value that could be utilized in rebuilding the structure. Under the findings of the court as established in this record, we are of the opinion that the elements involved in the "identity" test are sufficiently established to refute the finding of total loss by the trial court.

As previously noted, our Supreme Court in *Laurenzi* utilized the elements of the "identity" test to make a determination of whether the property involved therein was a total loss and this appears to be the only reported Tennessee case dealing with this question. Nevertheless, the trial court in the instant case adopted the "prudent man" test to make the determination that the building was a total loss.

We are not prepared to make such an adoption. There is a marked difference between the Supreme Court, the highest court in the state, and the Court of Appeals, an intermediate appellate court. It is the duty of the Court of Appeals to apply the law as promulgated by the legislature or as announced by the Supreme Court. This Court is bound by the Supreme Court's decisions under the doctrine of *stare decisis* and in no way is it the function of this court to intentionally reverse

**480**

the holding of the Supreme Court. Although the Supreme Court may wish to adopt the prudent man test for making a determination as involved in this case, we feel constrained to follow the test established in *Laurenzi*.

Therefore, the judgment of the trial court is reversed and this case is remanded for such further proceedings as may be necessary, including a determination by the trial court of the amount of loss sustained under the policy of insurance. Costs of appeal are assessed against the appellee. We pretermit consideration of the second issue.

TOMLIN, P.J. (W.S.), and HIGHERS, J., concur.