# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### JULY 12, 2006 Session

## ROBERT W. FINK, ET AL. v. FRED M. CREAN, ET AL.

**Direct Appeal from the Chancery Court for Williamson County**
**No. 23346      Timothy E. Easter, Chancellor**

---

**No. M2005-01364-COA-R3-CV - Filed on December 21, 2006**

---

In this appeal, we are asked to determine whether the chancery court properly awarded the plaintiffs a judgment of $90,000. The defendants made improvements to their real property, placing a paved driveway over a previously existing logging trail. The plaintiffs noticed an increased water runoff from storms onto their own real property, which abutted the defendants' property, and they attributed this increase to the improvements made by the defendants. The plaintiffs filed a complaint, and the action was referred to a judicial settlement conference. The result was the parties' entering into an agreed order to have engineers confer on a solution, however, a compromise was never reached. After a bench trial, the chancery court issued a memorandum opinion in which it found the defendants' actions to be an actionable temporary nuisance for which they were ordered to pay $14,144.50 in damages. The court also ordered the defendants to hire an engineer and workers to perform construction under one of two possible options, or to comply with a third option of payment for the cost of building a retaining wall, within 180 days from final judgment to prevent further damage to the plaintiffs' property. The court further ordered that its memorandum opinion be reduced to writing in an order and final judgment to be drafted by the plaintiffs. The plaintiffs drafted an order, which the trial court and counsel for all parties signed, however this order substituted part of the court's language regarding the costs of a retaining wall with the specific dollar amount of $90,000. After 180 days had expired, and the defendants had begun but not completed construction per their chosen option, the plaintiffs filed for an execution of judgment in the amount of $90,000. The chancery court stayed the execution of judgment for thirty days, during which the parties' experts were to confer as to the sufficiency of the defendants' actions in addressing the nuisance. When this time period expired with no agreement between the experts or the parties, the chancery court entered an order for judgment in favor of the plaintiffs for $90,000. The defendants filed a timely notice of appeal to this Court. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Christina Ferrell, Franklin, TN, for Appellants

Gregory L. Cashion, Samuel J. Welborn, Nashville, TN, for Appellees

## MEMORANDUM OPINION[1]

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case began with a dispute between the Defendants, Fred M. Crean and Deborah Crean (the "Creans" or "Appellants"), and the Plaintiffs, Robert W. Fink and Glenda Fink(the "Finks" or "Appellees"). In 1993, the Creans made improvements to their property; specifically, they had a paved driveway built on top of an existing logging trail. Thereafter, the Finks noticed an increase in water runoff from the Creans' upper property to the Finks' lower property. The Finks filed a complaint in the Williamson County Chancery Court on May 25, 1995, alleging that the increased water runoff was a result of the Creans' driveway improvements. The complaint sought temporary and permanent injunctions, compensatory damages, "a reasonable attorney fee, discretionary and other costs for bringing this action."

The parties hired their own experts to provide advice on how best to remedy the situation. The Finks hired engineer Louis P. Mishu, and the Creans employed the services of engineer Joseph H. Ballard. Both engineers inspected the Creans' property and even agreed as to a solution,[2] but neither engineer's recommendation was implemented by the Creans at that time. The parties agreed

---

[1] Tenn. R. Ct. App. 10 states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] The solution recommended by both Mr. Mishu and Mr. Ballard was as follows:

A. Install a swale on the uphill side of Mr. Crean's driveway with the discharge point located in a different watershed. The swale should tie to the existing swale at the entrance gate.
B. Grade Mr. Crean's driveway so water is directed to the swale.
C. Install underdrains, to control ground water, which could discharge towards the Finks [sic] property.
As additional information, the underdrain should be installed along the uphill side of the driveway with a plug and crossdrain installed at 75-foot intervals. Also, *install asphalt curb on the downhill side near the entrance gate to prevent water from going onto the adjacent property during heavy rainfall.*

to refer the Finks' action to a judicial settlement conference, which resulted in an agreed order on November 24, 1997. However, because of a failure of the parties' engineers to agree on a solution, the agreed order ultimately had no binding effect on the parties or the present litigation. In 2000, the Finks hired another engineer, Gregg M. Clingerman ("Clingerman") who inspected the properties and put forth his own recommendations in a report.[3]

On March 11–12, 2004, a trial on the merits was held in the Chancery Court of Williamson County. On April 15, 2004, Chancellor Timothy L. Easter issued a memorandum opinion in which he found that the Finks had suffered damages to their property of $14,144.50 as a result of the Creans' driveway construction. The court held that the evidence did not support a finding that the Finks had sustained any damages beyond this amount. The court also held that the manner in which the driveway was constructed had created an actionable temporary nuisance, which could be corrected by the expenditure of labor or money, and that the Finks were entitled to such correction at the expense of the Creans. The court ordered the Creans to pay the Finks $14,144.50 in damages, representing monies spent for materials, repairs, and consultants. The court also ordered the Creans to elect one of three options for preventing further runoff damage to the Finks' property. The options were set out as follows:

> The Plaintiffs are further entitled to relief from the continued concentrated storm water runoff from the Defendants' driveway to the Plaintiffs' property. To accomplish this relief, the *Defendants shall employ an appropriate engineer* to perform a drainage study and design which addresses the impact of the existing drainage into the existing storm drain located near the entrance of the Defendants' driveway on Beech's Tavern Trail. This study shall address what, if any, impact this solution would have on altering the natural watersheds in the area. *If this drainage study finds that there would be no negative impact to the existing watershed, would create no further problems for the Defendants and that it would meet all*

---

[3] Clingerman, in his 2000 report, stated that the most logical and least expensive remedy (known as "Recommendation 1") would be for the Creans "*to install a curb along the northerly side of their driveway to direct stormwater flow into the existing french drain trench* . . . [p]lug the ends of all the 4-inch pipes that run under the driveway to force and/or keep stormwater run-off in the existing driveway french drain system."

Clingerman went on to state that "Option 1" could not guarantee that seepage problems would not occur, and that if this method were pursued, the Creans should hire an engineer "to perform a drainage study and design a system so not to impact the existing drainage system . . . ." He advised that this could be accomplished "by installing a small detention basin on the Crean's [sic] property to detain and control the concentrated stormwater run-off . . . ."

The report further recommended that, "[i]f we assume that no work is done on the Crean's [sic] property and in order to make sure no surface run-off or seepage through the hillside is directed onto the Fink's [sic] driveway[,]" a retaining wall be built to control the water runoff. Clingerman's estimated cost of this retaining wall was $81, 724, and he admitted that it "could be more or less depending on the final length of the retaining wall and how the retaining wall has to be designed based on the soil properties contained in a geotechnical report." These latter two recommendations were collectively designated "Recommendation 2" by the trial court in its May 11, 2004 memorandum opinion.

> *governmental storm water runoff regulations, then the Defendants shall undertake to implement the recommendation of Gregg Clingerman . . . , as his first recommendation.* The Court agrees that this is the most logical and probably the least costly solution. This solution may need altering a bit to accommodate the construction of Defendants' gate post, which have [sic] gone up since completion of the Clingerman Engineering Report.
>
> If the drainage study indicates a possible negative impact to the Defendants as a result of a change in the natural watershed or creates problems for other property owners, the Defendants shall have the options of *installing a storm detention basin on their property* to detain and control the concentrated storm water runoff into the existing drainage system *or pay for the costs of installing the retaining wall on the Plaintiffs' southern edge of their driveway* as set forth as recommendation 2 on page 3 of the Clingerman report . . . .

The court allowed the Creans ninety days from the date of final judgment to select and retain an engineer, and allowed them an additional ninety days to implement either recommendation one or two of the Clingerman report, totaling 180 days in which to remedy the Finks' storm water runoff problem. Finally, the court's memorandum opinion ordered counsel for the Finks to prepare a final judgment consistent with the findings in the memorandum opinion.

After an order had been drafted, which counsel for both parties signed, the trial court entered the judgment on August 26, 2004. The injunctive options set forth in this order were similar to those provided in the memorandum opinion, except that instead of the court's original provision for the third option to "pay for the costs of installing the retaining wall on the Plaintiffs' southern edge of their driveway," there was the following language: "pay damages to the Plaintiffs in the amount of $90,000, which amount is subject to post-judgment interest from the date of entry of this Order and Final Judgment." There was no mention of attorneys' fees in this order, or in the memorandum opinion entered by the court.

Over 180 days later,[4] on March 9, 2005, the Creans filed a document with the chancery court entitled "Status Report Regarding Satisfaction of Judgment." In this report, the Creans stated that payment of $14,144.50 had been tendered to the Finks on December 6, 2004, and that post-judgment interest on that amount had been paid on December 15, 2004. The Creans submitted that they had retained the services of engineer Gary O'Brien("O'Brien"), and they attached to the motion O'Brien's final report on the runoff problem. The Creans explained that they had chosen to pursue the option known as "Clingerman Recommendation Number 1" after discussing it with O'Brien, and

---

[4] During this time period, on September 24, 2004, Paul C. Ney, then counsel for the Creans, filed a motion to withdraw and substitute William Squires as new counsel, which the Chancellor granted by order on September 28, 2004.

that this option was "ready to be implemented by Mr. Richard Spann, and await[ed] only an improvement in weather for construction to be complete." In their status report, the Creans went on to describe the various steps that they had undertaken between September 2004 and March 2005 to comply with the court's final order, which allegedly included: submitting initial inquiries to a number of engineers, requesting bid estimates, inviting engineers to view the site, hiring O'Brien, inquiring to asphalt paving construction companies, having their counsel review O'Brien's report for compliance with the court's order, and discussing a construction schedule with Richard Spann based on the O'Brien report. Based upon these statements, the Creans submitted to the court that they were in substantial compliance with the court's order, and that full compliance would occur upon the weather's improvement.

On March 9, 2005, the Finks notified the Creans of their intent to execute a $90,000 judgment pursuant to the August 26, 2004 final judgment. On March 10, 2005, the Creans filed a motion to quash the execution and levy. In this motion, the Creans claimed that on March 8, the construction crew that had been hired for the alteration of their driveway performed measurements, that on March 9, stone and other materials to be used were cut and measured, that on March 10, the crew began trenching around the driveway for "curbing installation" as recommended by the engineering report, and that the foundation for this curbing had been scheduled to begin that day. The chancery court held a hearing on this motion on March 14, and on April 4 the court ordered a stay of execution of the judgment for 30 days from the hearing. The court also ordered that Clingerman be allowed to inspect the Creans' driveway to see if the work being performed was in accord with "Clingerman Recommendation Number 1." The court further ordered the Creans to pay the Finks' attorney's fees associated with the stay of execution issue, which amounted to $1,397.88.

On April 18, 2005, the Creans filed a motion for clarification of the April 4 order, or in the alternative, relief from the final order of August 26, 2004, as well as a memorandum in support thereof. Meanwhile, a dispute arose between the parties as to whether the work implemented per O'Brien's recommendations conformed with the recommendations set forth in Clingerman's 2000 report.[5] On May 2, the chancery court heard argument on the Creans' motion for clarification or relief. On May 11, the Chancellor entered an order denying the Creans' motion for clarification or relief, and awarded the Finks a judgment of $90,000 plus costs. The court also denied any pre-judgment or post-judgment interest and attorneys' fees through the date of the order. The Creans filed a notice of appeal to this Court on June 7, 2005.[6]

---

[5] This dispute is reflected in the transcript record by a letter from Clingerman to the Finks' counsel filed with the court on April 29, as well as the Finks' response to the Creans' motion for clarification or relief. In the letter, Clingerman stated, in relevant part: "After inspecting the work and reviewing my report and testimony it is my opinion that the work completed does not meet recommendation Number 1 contained in my April 2000 engineering report."

[6] The notice of appeal was filed by William Squires as counsel for Appellants. On September 12, 2005, Christina Ferrell filed with the chancery court a notice of appearance as new counsel for the Creans.

## II. ISSUES PRESENTED

The Creans filed a timely notice of appeal,[7] and present the following issues for review:

1. Whether the chancery court erred in awarding a $90,000 judgment to the Finks; and
2. Whether the chancery court erred in its choice of the proper measure of damages.

For the following reasons, we affirm.

## III. DISCUSSION

Before proceeding to the Creans' arguments on appeal, we must first address a preliminary issue raised by the Finks. In their response brief on appeal, the Appellees challenge the timeliness of the Creans' appeal to this Court. The Finks allege that the August 26, 2004 order was the final judgment in this case, rather than the May 11, 2005 order. They argue that any issues not raised by the Creans for appeal within 30 days of the August 26, 2004 order are now time barred. We find the Finks' arguments on this issue to be unpersuasive for the following reasons.

This appeal was brought pursuant to Rule 3(a) of the Tennessee Rules of Appellate Procedure, which clearly states:

> Except as otherwise permitted in rule 9 and in Rule 54.02 Tennessee Rules of Civil Procedure, if multiple parties or multiple claims for relief are involved in an action, any order that adjudicates fewer than all the claims of the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all the parties.

TENN. R. APP. P. 3. As interpreted by our supreme court, Rule 54.02 of the Tennessee Rules of Civil Procedure allows parties to finalize certain other non-final judgments by first obtaining certification from the trial court that the court has "directed the entry of a final judgment as to one or more but fewer than all of the claims, and . . . ma[d]e an express determination that there is no just reason for delay. *Fox v. Fox*, 657 S.W.2d 747 (Tenn. 1983). The court stated that "[i]n the absence of such direction and determination by the trial judge, the order is interlocutory and can be revised at any time before the entry of judgment adjudicating all the claims and rights and liabilities of all parties." *Fox*, 657 S.W.2d at 749 (citing *Stidham v. Fickle Heirs*, 643 S.W.2d 324, 325 (Tenn. 1982)).

In the Finks' original complaint, the prayer for judgment reflects that the Appellees sought multiple claims for relief: temporary and permanent injunctions against the Creans, compensatory

---

[7] The Finks dispute that the notice of appeal was timely filed in this case. We disagree and provide an explanation in the Discussion section below.

damages, and "a reasonable attorney fee, discretionary and other costs for bringing this action." The Chancellor did not rule on the issue of attorneys' fees in his April 15, 2004 memorandum opinion, and the issue was similarly not addressed by the corresponding August 26, 2004 "Order and Final Judgment" drafted by counsel for the Finks.

Even assuming that both the memorandum opinion and the order drafted by counsel for the Finks disposed of their claims as to injunctive relief, compensatory damages, and costs of the proceedings, as noted above, the court did not ultimately adjudicate the issue of attorneys' fees until its order of May 11, 2005, in which it awarded the $90,000 judgment to the Appellees and specifically denied additional attorneys' fees through the date of the order.[8] If either party wished to make the judgment final on August 26, 2004, they could have proceeded under Rule 54.02 of the Tennessee Rules of Civil Procedure seeking certification by the trial court, but they did not do so.

Applying Rule 3 of the Tennessee Rules of Appellate Procedure, all of the claims and rights of the parties were not decided until the order entered on May 11, 2005, and as such, this order was the appealable final judgment. Since the Appellants filed their notice of appeal on June 7, 2005, within the appropriate thirty day period, this notice of appeal was timely filed and the matter is properly before this Court.

### A. Propriety of the $90,000 Award

The first argument by Appellants to be considered is whether the chancery court erred in awarding a $90,000 judgment to the Finks. Appellants argue that this amount was not supported by the evidence in the record. The Creans posit this argument by directing this Court's attention to the absence of a $90,000 amount in the chancery court's April 15, 2004 memorandum opinion. Appellants note that the memorandum opinion "carefully outlines all of the conclusions regarding liability and damages as well as the future remedial actions that the Creans were to implement in order to address the storm runoff issue . . . ." The Creans state that the first occurrence of a $90,000 damage award in the record occurred in the August 26, 2004 order drafted by the Finks' counsel.[9] Furthermore, Appellants point to the absence of a rationale for the calculation of these damages in the August 26, 2004 order. The Creans further argue that the August 26, 2004 order "was intended to allow them the option of paying damages, rather than installing a storm detention drain basin in the event that their engineering study did not support implementation of the Clingerman Recommendation."

---

[8] While the court did award $1,397.88 in attorneys' fees to the Finks in the April 4, 2005 order staying execution of judgment, it clearly indicated that this award was limited to those fees associated with the stay of execution issue.

[9] At oral argument, the Finks' counsel, Mr. Cashion, claimed that the August 26, 2004 order was the result of a cooperative endeavor involving himself and Mr. Paul Ney, who was then counsel for the Creans. As Mr. Cashion admitted that there is nothing in the record to reflect this, this Court shall henceforth consider the order to have been drafted by Mr. Cashion, as called for by the trial court's May 15, 2004 memorandum opinion.

Appellees contend that the $90,000 judgment imposed by the court represents the present day cost of installing a retaining wall and is supported by the evidence in the record. In support of this argument, the Finks point to the chancery court's May 15, 2005 memorandum opinion, specifically the section listing the Creans' available options and containing the language, "or pay for the costs of installing the retaining wall on the Plaintiffs' southern edge of their driveway as set forth as recommendation 2 on page 3 of the Clingerman Report . . . ." Appellees note that within this report, written in 2000, Clingerman stated that the cost of erecting a retaining wall pursuant to "Clingerman Recommendation 2" was $81,724. Appellees argue: "Given that this calculation was approximately five years old at the time the Order and Final Judgment was entered, it is clear that the trial court's damage figure of $90,000.00, which was agreed to by counsel for both parties, is, in light of inflation, reasonable under the circumstances."

The existence of a temporary nuisance on the Creans' property affecting the Finks' property is not at issue in this appeal. While several issues are in dispute in this highly fact-driven case, our review is limited to the trial court's $90,000 award. We generally will review only those issues presented for review by the parties. TENN. R. APP. P. 13(b) (2005). We find that Appellants' failure to include a transcript or statement of evidence on appeal directs us to affirm the trial court's implicit finding that $90,000 represents the cost of building a retaining wall and its subsequent award in Appellees' favor.

The trial court's April 15, 2004 memorandum opinion set forth extensive findings of fact based upon the trial record, and the record before us shows that the trial court relied upon both the recommendations of Joseph Ballard in 1995 and the 2000 Clingerman Report as a basis for imposing the three equitable remedy options available for implementation by the Creans. Specifically, the court found that the solution set forth by Joseph Ballard in his September 20, 1995 letter to the Creans' attorney was "a logical and economical resolution" to the storm runoff problem, and that this solution was also consistent with "Recommendation #1" from Clingerman's engineering report in 2000. The court gave the Creans the option to implement this remedy, but if their engineers determined that it would have a negative impact to the Creans, the Creans also had the option to implement "Recommendation 2" by either installing a storm detention basin "or pay[ing] for the costs of installing the retaining wall. . . ."

From our review of the technical record, it appears that the $90,000 amount in the August 26, 2004 order was inserted into the court's enumerated options should the Creans choose not to act on the other two proposed methods of performance. Counsel for both parties and the chancellor signed this order. The trial court's thorough findings of fact as to liability of the Creans and feasability of the experts' recommendations are reflected in the appellate record in the April 15, 2004 memorandum opinion, however there is no transcript of evidence or statement of evidence from trial for this Court to review on appeal. The basis of the $90,000 amount awarded to the Finks is not completely apparent from the technical record. The only monetary figure approaching the $90,000 amount that is present in the record before us is in Clingerman's engineering report, which estimated that the cost of installing a retaining wall in 2000 would be $81,724. Appellees cite to this figure as providing a basis for their including the $90,000 amount in the August 26, 2004 order.

The amount of damages to be awarded is a fact question which, upon appeal from a non-jury judgment, is reviewed by this Court *de novo* upon the record accompanied by a presumption of the correctness of findings of fact unless the evidence preponderates otherwise. *Rinehart v. State*, No. 01-A-01-9309-BC-00428, 1994 Tenn. App. LEXIS 204, at \*7 (Tenn. Ct. App. Apr. 13, 1994) (citing TENN. R. APP. P. Rule 13(d); *Foster v. Bue*, 749 S.W.2d 736 (Tenn. 1988)).

Where no transcript of the evidence is filed, there is a presumption that the proceedings were proper and that the evidence supported the judgment. *Fisher v. Fisher*, No. W1998-00864-COA-R3-CV, 2000 Tenn. App. LEXIS 173, at \*10 (Tenn. Ct. App. March 20, 2000) (citing *Wilson v. Hafley*, 189 Tenn. 598, 226 S.W.2d 308, 311 (1949); *Hollingsworth v. Safeco Ins. Cos.*, 782 S.W.2d 477, 479 (Tenn. App. 1989)). The appellate court must assume that the record would support the trial court's findings. *Id.* (citing *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992)).

We find that the August 26, 2004 order inserting the $90,000 amount in place of the earlier memorandum opinion's "or pay[ing] for the costs of installing the retaining wall" language effectively operated as a finding by the trial court that this dollar amount represented such costs. Since there is no transcript or statement of evidence before us that might allow us to consider whether the evidence preponderates against this finding, we must therefore presume this amount to be correct and affirm the judgment of the trial court.

## B. Measure of Damages

Appellants' second argument on appeal is closely related to the first. As we perceive the issue, Appellants submit that if a measure of damages was appropriate in this instance, the chancellor erred by applying the wrong standard by which to measure the award. The Creans again suggest that the award is punitive, rather than compensatory, in nature, and that the record is devoid of any findings that the award would allow the Finks to restore their property to its pre-nuisance condition or that the award was for the purpose of building a retaining wall. Appellants argue that after a dispute arose as to the sufficiency of the work that they had performed on their property, the chancellor incorporated the $90,000 judgment into its final order of May 11, 2005, effectively awarding a "windfall" to the Finks that was not justified by the proof. Appellants liken this award to punitive damages "directed at punishment of the Creans for failing to meet the specifications of [Clingerman], who determined only after substantial work was done that those specifications were not met." Conversely, Appellees argue that the $90,000 award is compensatory, and not "a windfall," and that this award is a proper measure of damages enabling the Finks to restore their property to its pre-nuisance condition in light of the Creans' "utter failure" to implement "Clingerman Recommendation 1."

"Whether the trial court has utilized the proper measure of damages is a question of law that we review *de novo*." *Beaty v. McGraw*, 15 S.W.3d 819, 829 (Tenn. Ct. App. 1998). The parties have stipulated that a temporary nuisance exists. As recognized by both parties, "[a] temporary nuisance is one that can be corrected with the expenditure of labor and money." *Largent*

***Contracting., Inc. v. Dement Constr. Co.***, No. W1999-02736-COA-R3-CV, 2001 Tenn. App. LEXIS 266, at \*19–20 (Tenn. Ct. App. Apr. 17, 2001) (citing ***Caldwell v. Knox Concrete Prod. Inc.***, 391 S.W.2d 5 (Tenn. Ct. App. 1964)). Where the nuisance is temporary, damages to property affected by the nuisance are recurrent and may be recovered from time to time until the nuisance is abated. ***Pate v. Martin,*** 614 S.W.2d 46, 48 (Tenn. 1981). The measure of such damages is the injury to the value of the use and enjoyment of the property. *See **id.*** This Court has also held:

> A party that has been subjected to a nuisance may be entitled to several types of damages. *These damages may include the cost of restoring the plaintiff's property to its condition prior to the creation of the nuisance*, personal damages such as inconvenience and emotional distress, and injury to the use and enjoyment of her property. Such damages are not mutually exclusive.

***Pryor v. Willoughby***, 36 S.W.3d 829, 831 (Tenn. Ct. App. 2000) (emphasis added) (citing ***Citizens Real Estate v. Mountain States Dev. Corp.***, 633 S.W.2d 763, 767 (Tenn. Ct. App. 1981)).

Appellants do not take issue with the trial court's award of $14,144.50 to the Finks, in fact the record shows that this amount was paid in full in December of 2004. In its April 15, 2004 memorandum opinion, the court measured this damage amount according to its own findings of the Finks' out-of-pocket costs in dealing with the nuisance, namely materials, repairs, and consultant costs. As discussed above, the record in its present state does not indicate whether the court ever articulated findings as to the costs of installing a retaining wall, but the $90,000 amount was nonetheless incorporated into its order on August 26.

Again, because Appellants filed no transcript of evidence for us to review, we must presume to be correct the trial court's finding as to the amount of money necessary to install a retaining wall. When no transcript of the evidence is filed, we will conclusively presume that the proceedings were proper and that the evidence supported the judgment. ***Fisher v. Fisher***, No. W1998-00864-COA-R3-CV, 2000 Tenn. App. LEXIS 173, at \*10 (Tenn. Ct. App. March 20, 2000) (citing ***Wilson v. Hafley***, 189 Tenn. 598, 226 S.W.2d 308, 311 (1949); ***Hollingsworth v. Safeco Ins. Cos.***, 782 S.W.2d 477, 479 (Tenn. App. 1989)). The appellate court must assume that the record would support the trial court's findings. ***Id.*** (citing ***Sherrod v. Wix***, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992)). The trial court was within its discretion in ordering that corrective action be taken to address the nuisance that was present on the Creans' property. The options set forth in the memorandum opinion involved either the installation of a curb according to Clingerman's "Recommendation 1," the installation of a storm detention basin per this same recommendation, or payment for the cost of installing a retaining wall. These options involved the expenditure of labor and money, and nothing in the appellate record suggests that they were improperly measured by the trial court. *See **Largent Contracting.**, **Inc.***, 2001 Tenn. App. LEXIS 266, at \*19–20. We have already determined that the trial court found that $90,000 accurately represented the cost of installing a retaining wall, and we must presume this amount to be correct. We further hold that the trial court employed a proper measure of damages, and accordingly, we affirm the judgment of the trial court.

**IV. CONCLUSION**

For the reasons set forth herein, we affirm the judgment of the chancery court. Costs of this appeal are taxed to Appellants, Fred M. Crean and Deborah Crean, and their surety, for which execution may issue if necessary.

_____

ALAN E. HIGHERS, JUDGE