IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 12, 2005 Session

# JENNIFER FRIEND CARTY MCKAY v. DEWITT TALMADGE MCKAY, III

**A Direct Appeal from the Circuit Court for Shelby County**
**No. 158024-2     The Honorable James F. Russell, Judge**

_____

**No. W2004-00610-COA-R3-CV - Filed January 31, 2005**

_____

Appellant appeals from the trial court's order imposing Tenn. R. Civ. P. 37 sanctions, which includes dismissal with prejudice of Appellant's post-divorce "Motion for Rehearing of Child Support" and "Petition to Modify Custody and/or Visitation." Finding no evidence on which to conclude that the trial court abused its discretion in applying these sanctions, we affirm the judgment of the trial court, and remand for determination of damages for the filing of a frivolous appeal.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J. joined.

Kaye G. Burson of Memphis for Appellant, Dewitt Talmadge McKay, III

John C. Ryland of Memphis for Appellee, Jennifer Friend Carty McKay

### MEMORANDUM OPINION[1]

DeWitt Talmadge McKay, III ("Father," or "Appellant") and Jennifer Friend Carty McKay ("Mother," or "Appellee") were divorced pursuant to a "Final Decree of Divorce" that was entered on June 10, 1998. The "Final Decree of Divorce" incorporated by reference the parties' "Marital

_____

[1] Rule 10 (Court of Appeals). Memorandum Opinion.-(b) The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in a subsequent unrelated case.

Dissolution Agreement" ("MDA"). The parties have two minor children, Courtney Elizabeth McKay (d.o.b. July 15, 1991) and DeWitt Talmadge McKay, IV (d.o.b. August 20, 1993). The MDA gives the parties joint custody of the children, with Mother designated as the children's primary physical custodian and ultimate decision maker.

Paragraph 27 of the MDA provides that, beginning March 1998, Father is to pay Mother the sum of $1,000 per month for the support of the two minor children. Paragraph 27 further provides that, beginning with the tuition due for the 1999-2000 school year, Father, "for so long as he is financially able," is to pay for one-half of the private school education of the parties' minor son.

The technical record is rather voluminous because of the unusual amount of filings on the part of Ms. McKay, primarily to enforce her rights under the discovery rules. Since we are dealing with sanctions for violation of the rules concerning discovery, the Opinion will be more understandable if we outline in detail the proceedings.

On September 9, 1999, Ms. McKay filed her "Petition to Modify Final Decree of Divorce, for an Order Requiring Defendant to Pay Private School Tuition, Camp Expenses, and Medical Expenses as Provided in the Final Decree of Divorce, and Attorneys' Fees." In the Petition, Ms. McKay sought, *inter alia*, a modification of the Final Decree of Divorce to increase Mr. McKay's monthly child support obligation and to require him to pay his one-half share of the private school tuition for the parties' son.

On September 13, 1999, "Plaintiff's First Set of Interrogatories Propounded Upon Defendant" and "Plaintiff's Request for Production of Documents" were filed and served upon Mr. McKay. When no response was made by Mr. McKay, Ms. McKay filed a "Motion to Compel Discovery" on October 29, 1999. On November 4, 1999, the trial court entered its "Order on Motion to Compel Discovery," which ordered Mr. McKay to respond to "Plaintiff's First Set of Interrogatories Propounded on Defendant" and "Plaintiff's Request for Production of Documents" no later than the close of business on Monday, November 8, 1999.

On November 9, 1999, "Defendant's Responses to Plaintiff's Request for Production of Documents" and "Defendant's Responses to Plaintiff's Request for Production of Documents" were filed. On December 10, 1999, Ms. McKay filed a "Motion to Compel Discovery and for Sanctions" based upon her assertion that Mr. McKay's aforementioned responses were not complete.

On January 6, 2000, Mr. McKay filed "Defendant's Responses to Plaintiff's Request for Production of Documents" and "Defendant's Amended Answers to Interrogatories." An "Order on Motion to Compel Discovery and for Sanctions" was entered on February 8, 2000.

On June 27, 2000, Mr. McKay filed his "Petition to Modify Final Decree of Absolute Divorce as to Child Support," in which he sought a downward modification of his child support obligation based upon an alleged change in his income.

On August 4, 2000, "Plaintiff's Second Set of Interrogatories Propounded Upon Defendant" and "Plaintiff's Second Request for Production of Documents" were filed and served upon Mr. McKay. On October 23, 2000, having received no response from Mr. McKay, Ms. McKay filed a "Motion to Compel Discovery." On November 15, 2000, Mr. McKay filed "Defendant's Response to Plaintiff's Second Request for Production of Documents" and "Defendant's Answers to Plaintiff's Second Set of Interrogatories Propounded Upon Defendant."

On January 4, 2001, David Caywood, attorney for Mr. McKay, filed a "Motion to Withdraw" and an Affidavit in support thereof. On January 22, 2001, an "Order Allowing Withdrawal of Counsel" was entered allowing Mr. Caywood to withdraw as Mr. McKay's attorney.

On February 2, 2001, Ms. McKay filed her "Amended and Supplemental Petition to Modify Final Decree of Divorce, for an Order Requiring Defendant to Pay Private School Tuition, Camp Expenses, and Medical Expenses as Provided in the Final Decree of Divorce, for Scire Facias and Citation for Civil and Criminal Contempt and for Attorneys' Fees."

After Mr. Caywood was allowed to withdraw as Mr. McKay's counsel, Ms. McKay's attorney requested that Mr. McKay authorize Mr. Caywood to make the documents in Mr. Caywood's possession responsive to "Plaintiff's Second Request for Production of Documents" available for copying. Mr. McKay refused to provide such authorization. As a result, on March 9, 2001, Ms. McKay filed a "Motion to Compel Discovery and to Require Defendant to Supplement Prior Discovery Responses." On March 28, 2001, an "Order on Motion to Compel Discovery and to Require Defendant to Supplement Prior Discovery Responses" was entered. Pursuant to this Order, Mr. McKay was required to supplement his responses to Ms. McKay's first set of interrogatories, first request for production of documents, second set of interrogatories and second request for production of documents by providing Ms. McKay's counsel with fully updated information and/or documentation responsive to the discovery requests by April 16, 2001. By the time of the entry of this Order by the trial court, Mr. McKay had retained legal representation with attorney Darrell Blanton. Following the entry of this Order, Mr. McKay executed an authorization to allow Mr. Caywood's office to make the responsive discovery documents available for copying by Ms. McKay's counsel. However, when Ms. McKay's counsel contacted Mr. Caywood's office to make arrangements to copy the documents, the documents had been removed by Mr. McKay. On April 20, 2001, Ms. McKay filed her "Motion to Compel and for Sanctions Pursuant to Rule 37 of the Tennessee Rules of Civil Procedure." The Motion asserts that, in addition to removing the requested documents from Mr. Caywood's office, Mr. McKay took no steps to deliver these documents to Ms. McKay's counsel. Furthermore, the Motion asserts that Mr. McKay failed to supplement his prior discovery responses on or before the April 16, 2001 deadline established by the trial court's March 28, 2001 Order.

On July 6, 2001, Ms. McKay filed her "Second Amended Petition to Modify Final Decree of Divorce, for an Order Requiring Defendant to Pay Private School Tuition, Camp Expenses and Medical Expenses as Provided in the Final Decree of Divorce, for Scire Facias and Citation for Civil and Criminal Contempt and for Attorney Fees."

After the April 20, 2001 filing of Ms. McKay's "Motion to Compel Discovery and for Sanctions Pursuant to Rule 37 of the Tennessee Rules of Civil Procedure," Mr. McKay made documents retrieved from Mr. Caywood's office available for copying. In addition, he provided Ms. McKay's counsel with documentation to supplement his responses to "Plaintiff's Second Request for Production of Documents." However, according to Ms. McKay, numerous deficiencies existed in Mr. McKay's responses. Additionally, Mr. McKay allegedly persisted in his refusal to supplement his responses to Ms. McKay's first set of interrogatories and request for production of documents, notwithstanding his court ordered obligation to do so. Consequently, on August 14, 2001, Ms. McKay filed a "Second Motion to Compel and for Sanctions Pursuant to Rule 37 of the Tennessee Rules of Civil Procedure." After this second Motion was filed, Mr. McKay provided Ms. McKay with information and/or documentation supplementing his prior responses to Ms. McKay's first set of interrogatories and first request for production of documents.

On September 7, 2001, Ms. McKay filed her "Third Amended Petition to Modify Final Decree of Divorce, for an Order Requiring Defendant to Pay Private School Tuition, Camp Expenses, and Medical Expenses as Provided in the Final Decree of Divorce, for Scire Facias and Citation for Civil and Criminal Contempt and for Attorney Fees." Thereafter, the parties were able to resolve the issues of criminal contempt against Mr. McKay. The parties' resolution of these issues was approved by the trial court pursuant to the "Order Dismissing Petitions for Criminal Contempt Against Respondent" entered on April 19, 2002.

On May 22, 2002, "Plaintiff's Third Request for Production of Documents" and "Plaintiff's Third Set of Interrogatories Propounded Upon Defendant" were filed with the trial court and served upon Mr. McKay. On May 30, 2002, Mr. McKay filed a "Motion for Protective Order," which alleged that Ms. McKay's third request for documents and third set of interrogatories "are meant for annoyance, embarrassment and oppression and are unduly burdensome and expensive and are repetitious...." Thereafter, Darrell Blanton withdrew as Mr. McKay's counsel and Mr. McKay retained legal representation with attorney William Winchester.[2] When Mr. McKay did not respond to her aforementioned discovery requests, Ms. McKay filed another "Motion for Order Compelling Discovery and for Award of Attorney Fees," on July 12, 2002. On September 25, 2002, a "Consent Order on Motion for Order Compelling Discovery and for Award of Attorney Fees" was entered by the trial court. Pursuant to this consent Order, Mr. McKay was required to respond to "Plaintiff's Third Set of Interrogatories Propounded Upon Defendant" and "Plaintiff's Third Request for Production of Documents" on or before September 30, 2002. On or about September 27, 2002, Mr. McKay submitted "Defendant's Answers to Plaintiff's Third Set of Interrogatories" to Ms. McKay's counsel. Ms. McKay contends that these answers too were not fully responsive.

On September 23, 2002, Mr. McKay filed his "Petition to Modify Custody and/or Visitation." On December 9, 2002, Ms. McKay filed "Respondent's First Set of Interrogatories to Petitioner" and

_____

[2] On July 1, 2003, a "Consent Order Allowing Defendant's Attorney to Withdraw Representation" was entered allowing Mr. Winchester to withdraw as Mr. McKay's counsel. Thereafter, Mr. McKay retained attorney Kaye G. Burson as his counsel.

"Respondent's First Request for Production of Documents Propounded to Petitioner" seeking discovery from Mr. McKay concerning the allegations raised in his Petition. When she received no response to these requests, Ms. McKay filed a "Motion for Order Compelling Discovery and for Award of Attorney Fees" on February 13, 2003. After this Motion was filed, Mr. McKay submitted "Petitioner's Answers to Respondent's First Set of Interrogatories to Petitioner" and "Petitioner's Answers to Respondent's First Request for Production fo Documents Propounded to Petitioner." Ms. McKay asserts that these discovery responses were "evasive, woefully incomplete and non-responsive."

On December 16, 2002, the Shelby County Divorce Referee conducted a hearing on Ms. McKay's petition for an increase in Mr. McKay's child support obligation and for an order requiring Mr. McKay to pay one-half of the private school tuition for the parties' son. The Referee also considered Mr. McKay's petition seeking a decrease in his support obligation. At the conclusion of the hearing, Mr. McKay's petition was denied. Ms. McKay's petition was granted and Mr. McKay's monthly support obligation was increased to $1,586 per month retroactive to December 31, 1999. Mr. McKay was also required to pay one-half of the private school tuition also retroactive to December 31, 1999.

On March 3, 2003, Mr. McKay filed a "Motion for Rehearing on Child Support." On May 2, 2003, the trial court entered its "Order Confirming Divorce Referee's Ruling."

On May 22, 2003, Ms. McKay filed a "Notice to Take Deposition" for the discovery deposition of Mr. McKay's brother, Jim T. McKay, Jr., on June 12, 2003, and a subpoena was issued accordingly. On May 22, 2003, Ms. McKay also filed a "Notice to Take Deposition" for the discovery deposition of Mr. McKay on June 12, 2003. Neither Mr. McKay nor his brother appeared at their June 12, 2003 depositions. Consequently, on July 18, 2003, Ms. McKay filed her "Motion for Sanctions Pursuant to Rule 37 of the Tennessee Rules of Civil Procedure." On September 5, 2003, the "Affidavit of John C. Ryland in Support of Motion for Sanctions Pursuant to Rule 37 of the Tennessee Rules of Civil Procedure" was filed. On September 17, 2003, an "Order on Motion for Sanctions Pursuant to Rule 37 of the Tennessee Rules of Civil Procedure" was entered. This Order granted Ms. McKay's motion and imposed sanctions upon Mr. McKay. Said sanctions included, but were not limited to, the dismissal with prejudice of Mr. McKays's "Motion for Rehearing on Child Support" and "Petition to Modify Custody and/or Visitation." An "Amended Order on Motion for Sanctions Pursuant to Rule 37 of the Tennessee Rules of Civil Procedure" was entered by the trial court on October 17, 2003. The Order was amended to include language providing that the order on Ms. McKay's motion for sanctions was being entered as a final judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure.

On October 17, 2003, "Defendant's Motion to Alter or Amend Judgment" was filed by Mr. McKay. Contemporaneously with the filing of this Motion, the "Affidavit of Defendant, DeWitt Talmadge McKay, III" was filed along with Mr. McKay's "Memorandum of Law in Support of Defendant's Motion to Alter or Amend Judgment." Ms. McKay filed a "Memorandum of Law in

Opposition to Defendant's Motion to Alter or Amend" on November 11, 2003. Mr. McKay's "Motion to Alter or Amend Judgment" was denied by Order entered January 23, 2004.

Mr. McKay appeals and raises one issue for review as stated in his brief: "Whether the trial court abused its discretion and erred in granting the Plaintiff-Appellee's 'Motion for Sanctions Pursuant to Rule 37 of the Tennessee Rules of Civil Procedure' in dismissing the Defendant-Appellant's 'Motion for Rehearing of Child Support' filed on March 3, 2003, and dismissing Defendant's 'Petition to Modify Custody and Visitation' filed on September 23, 2003."

Ms. McKay raises one additional issue as stated in her brief: "Whether Father should be required to pay Mother's attorney fees incurred in defending this appeal?"

We first note that appellate courts review a trial court's decision to impose sanctions and its determination of the appropriate sanction under an abuse of discretion standard. *Lyle v. Exxon Corp.*, 746 S.W.2d 694, 699 (Tenn.1988). Trial courts have wide discretion to determine the appropriate sanctions to be imposed for abuses of the discovery process. *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121 (Tenn. 1994). Such discretionary decisions will be set aside on appeal only when the "trial court has misconstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of the evidence." *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999) (citing *Overstreet v. Shoney's, Inc.*, 4S.W.3d 694, 709 (Tenn. Ct. App. 1999)). Tenn.R.Civ.P. Rule 37 expressly authorizes the trial court to dismiss a plaintiff's action, either upon motion or *sua sponte*, as a sanction for the plaintiff's violation of the court's discovery order or for a party's failure to attend a deposition. *See* Tenn. R. Civ. P. 37.04 and Tenn. R. Civ. P. 37.02(C). Accordingly, courts have repeatedly upheld the dismissal of an action where the plaintiff has failed to comply with the trial court's order compelling discovery. *See, e.g., Holt v. Webster*, 638 S.W.2d 391 (Tenn. Ct. App.1982); *Johnson v. Wade*, 2000 WL 1285331 (Tenn. Ct. App. Sept. 6, 2000); *Gordon v. Wilson*, 1998 WL 315940 (Tenn. Ct. App. June 15, 1998); *Nokes v. Hooper*, 1989 WL 115186 (Tenn. Ct. App. Oct. 4, 1989); *Ratliff Development Corp. v. Brooks*, 1988 WL 116455 (Tenn. Ct. App. Nov. 2, 1988). When a trial court imposes the sanction of dismissal, the decision will not be disturbed on appeal in the absence of an affirmative showing that the trial judge abused his or her discretion. *Shahrdar v. Global Housing, Inc.*, 983 S.W.2d 230, 236 (Tenn. Ct. App.1998). As we noted in *Holt*, dismissal is a harsh sanction, but as the *Holt* Court explains, if a party flouts the discovery order of the trial court without showing any reason for their failure to timely comply with the Order of Discovery, then dismissal may be an appropriate remedy.

The cornerstone of Mr. McKay's appeal rests on his assertion that he did not willfully fail to attend his deposition because he was not aware that the deposition had been scheduled. We find this argument to be untenable. The record indicates that Mr. McKay's deposition was scheduled in accordance with the agreement of Mr. McKay's then attorney, Mr. Winchester. Furthermore, the record shows that the deposition was noticed in accordance with the Tennessee Rules of Civil Procedure. On June 11, 2003, the day before the scheduled deposition, Mr. Winchester sent a letter to Ms. McKay's attorney that reads, in relevant part, as follows:

> Given the termination of the attorney-client relationship at Mr. McKay's request, I will not be attending the deposition you have noticed for tomorrow....

This letter clearly indicates that Mr. McKay's attorney had notice of the deposition. It is well settled in Tennessee that notices and facts given to an attorney, while he or she is acting within the scope of his or her employment, are imputed to the client whether the attorney actually communicates his or her knowledge to the client. *See, e.g., Winstead v. First Tennessee Bank, N.A. Memphis*, 709 S.W.2d 627 (Tenn. Ct. App. 1986). Even if we assume *arguendo* (which we do not) that Mr. Winchester never advised his client of the scheduled deposition, this Court has affirmed dismissals even where the party's failure to comply with the trial court's discovery order appears to be more attributable to that party's attorney than to the party. *See, e.g. Nokes v. Hooper*, 1989 WL 115186 (Tenn. Ct. App. Oct.4, 1989); *Gordon v. Wilson*, 1998 WL 315940 (Tenn. Ct. App. June 17, 1998). Given the correspondence and Affidavits in this record, especially when viewed in light of the timing of Mr. McKay's termination of Mr. Winchester (on the eve of the deposition), it seems implausible that Mr. Winchester failed to notify Mr. McKay of his impending deposition. Rather, given the record as a whole, and especially in light of Mr. McKay's persistent failure to be forthcoming with documents or answers to interrogatories at any time in the discovery history of this case, it seems more likely to this Court that his failure to appear at his deposition was yet another willful defiance of the discovery process. Moreover, the question of Mr. McKay's knowledge of the date and time of his deposition is put to rest by the finding of the trial court that a representative of another attorney's office contacted plaintiff's attorney regarding Mr. McKay's deposition. The findings in the court's order state:

> It further appearing to the Court that on or about June 10, 2003, a representative from attorney Valerie Corder's office contacted Plaintiff's counsel concerning Defendant's June 12, 2003 deposition. The representative advised that Defendant had contacted Ms. Corder's office regarding representation but that Ms. Corder was out of the country and Defendant had not retained Ms. Corder's services. When the representative inquired about postponing the deposition, Plaintiff's counsel advised that since Defendant had not retained Ms. Corder and Plaintiff had rearranged her schedule to attend Defendant's deposition, Plaintiff's counsel could not agree to postpone the deposition. Therefore, the representative from Ms. Corder's office was advised that Defendant would need to appear for his deposition as noticed on June 12, 2003.

No transcript or statement of the evidence has been filed in this case. When the trial court hears evidence, but that evidence is not included in the record on appeal, it is conclusively presumed that the evidence supports the ruling of the trial court. *Wilson v. Hafley,* 189 Tenn. 598, 226 S.W.2d 308 (1949); *Turner v. Turner*, 739 S.W.2d 779 (Tenn. Ct. App. 1986). Consequently, we cannot

conclude that the trial court abused its discretion in imparting these particular sanctions under Tenn. R. Civ. P. 37.

Ms. McKay seeks an award of attorney fees and costs for a frivolous appeal. As our Supreme Court has stated, "Successful litigants should not have to bear the expense and vexation of groundless appeals." *Davis v. Gulf Insurance Group*, 546 S.W.2d 583, 586 (Tenn.1977). As discussed above, Mr. McKay has continually stymied these post-divorce proceeding by his willful non-compliance with the discovery process and those deadlines imposed by the trial court. Given Mr. McKay's modus operandi surrounding these proceedings, his failure to attend the scheduled deposition can only be viewed as the proverbial straw that broke the camel's back. If the trial court erred at all in levying these sanctions, then it was only in not imposing them sooner. Considering the totality of the circumstances, we hold that this appeal is frivolous.

For the foregoing reasons, the judgment of the trial court is affirmed, and this cause is remanded to the trial court for a determination of damages for the frivolous appeal. Costs of this appeal are assessed against the Appellant, DeWitt Talmadge McKay, III, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.