THEODORE S. KYRITSIS, Appellant, v. NICHOLAS
L. VIERON, Appellee.—382 S. W. (2d) 553.

Western Section. June 24, 1964.

Certiorari Denied by Supreme Court October 5, 1964.

W. C. Rodgers, Memphis, for appellant.

Jerre G. Duzane, Memphis, Apperson, Crump & Duzane, Memphis, of counsel, for appellee.

BEJACH, J. In this cause, Hon. Brooks McLemore, Jr. of Jackson, Tennessee, Chancellor of the Fourteenth Chancery Division of Tennessee, sat, by consent of the parties in the place of Judge J. B. Avery, Sr., who was ill.

This cause involves an appeal by Theodore S. Kyritsis, who was complainant in the lower court, from a decree of the Chancery Court of Shelby County, dismissing his bill against the Reverend Nicholas L. Vieron, a priest of the Greek Orthodox Church and pastor of the Church of the Annunciation, which is located at 573 N. Highland St., Memphis, Tenn., a church affiliated with the Greek Orthodox Church, Archdiocese of North and South America, under Archbishop Iakovos. Complainant is priest or pastor of a church designated as St. George's Greek Orthodox Church, Hellenic Association of St. George, which he claims is affiliated with the Greek Orthodox Church of North America and Canada, of Old Calendar belief, Most Rev. Petros Astyfides, Bishop. In this opinion, the parties will be referred to as in the lower court, as complainant and defendant, or called by their respective names.

Complainant was formerly a priest of the Greek Orthodox Church, under the jurisdiction of Archbishop Iakovos, but he was unfrocked by that church, and he seeks an injunction against defendant to prevent publication and circulation of a letter announcing that fact which was written by Archbishop Iakovos. In his original bill, complainant sought, in addition to an injunction, a recovery of damages for publication already made by the defendant. At the hearing in the lower court, how-

ever, complainant withdrew his request for damages and left the sole issue before the lower court and before this court, the question of whether or not an injunction should issue. The cause was tried in the lower court on oral evidence, but no bill of exceptions was filed by complainant. There are in the record, however, some depositions taken by defendant which tend to prove that complainant was in fact unfrocked by the Greek Orthodox Church, and that he is not, as is claimed by complainant, a priest of the Greek Orthodox Church, or of any of its branches or other churches affiliated with or connected in any manner with it.

The principal contention of complainant is that the letter of Archbishop Iakovos is libelous, and that publication or circulation of same, and/or oral comments on same by defendant, are libelous and slanderous. Complainant seeks by injunction to prevent any further publication or circulation by defendant of said letter or its contents. The letter of Archbishop Iakovos is made an exhibit to complainant's bill, and is in the words and figures, as follows:

"GREEK ORTHODOX ARCHDIOCESE OF NORTH AND SOUTH AMERICA

10 East 79th Street, New York 21, N. Y.

Protocol No. 104                              March 9, 1962

To the Reverend Clergy and the Communicants of the Greek Archdiocese of North and South America.

Reverend Fathers and my Dear spiritual children:

His All Holiness the Ecumenical Patriarch Athenagoras I, and the Holy Synod of the Ecumenical Patriarchate, resolved in their meeting of February 27, 1962 to unfrock

and remove from the ranks of priesthood Theodore S. Kyritsis formerly a Priest of our Greek Orthodox Community of St. George in Port Arthur, Texas.

Will you kindly read in Church the enclosed photostatic copy of the official announcement of unfrocking, and read also this letter, explaining to our Greek Orthodox Christians that the unfrocked Theodore Kyritsis is no longer a Priest of the Greek Archdiocese of North and South America. Kindly make known also that neither is Theodore Kyritsis recognized any longer as a Priest by the Greek Orthodox Patriarchate of Jerusalem, as we were assured by his Beatitude Benedictos, Patriarch of Jerusalem, in an official Patriarchal document with Protocol No. 106, dated February 3, 1962.

We hereby direct, therefore, that you have no association with the unfrocked Theodore Kyritsis, who is considered alien to our Church, and a danger to the salvation of our souls.

With infinite blessings and deep affection to our Lord,

(Signed) Archbishop Iakovos
ARCHBISHOP IAKOVOS

Note:

To be read in Church together with the enclosed respected Patriarchal letter.

AI:jm''

Complainant's bill alleges ''that the defendant reproduced said letter and mailed a copy to each of complainant's parisioners and friends and has mailed a copy of the letter to the press, and other persons completely disassociated with the Greek community, all in an at-

tempt to embarrass and defame the character and good standing of your complainant." Complainant's bill also alleges that during the month of May 1963, he was invited to appear before a group of church laymen at the Chelsea Avenue Methodist Church, 1086 Chelsea, and that on May 25, 1963, defendant wrote a letter to the Reverend Mr. Clayton, Pastor of that church, in which he published and circularized the above quoted letter. Said letter of defendant to Reverend Mr. Clayton is also exhibited with complainant's bill and is in the words and figures as follows:

"GREEK ORTHODOX CHURCH
'THE ANNUNCIATION'

573 North Highland

Memphis 12, Tennessee

Rev. Nicholas L. Vieron, Priest
Church Office FAirfax 7-3772

May 25, 1963

Rev. Mr. Clayton
Chelsea Avenue Methodist Church
1086 Chelsea Avenue
Memphis, Tennessee

Dear Rev. Clayton:

Enclosed, please find a photostatic copy of a document which, I am confident, you will use with discretion, both for your own person as well as mine.

Note the signatures on the document: His Eminence Archbishop Iakovos and His All Holiness, Athenagoras I. Enclosed, is also a page from our Church's official publication which contains articles written by both of these leading prelates of the Greek Orthodox Church, to

further identify them, although you may already be familiar with these names.

I am sure, that you, a member of a Church with a hierarchy and a disciplined organizational structure, will understand why I felt dutifully compelled to bring this information to your attention.

Thank you, and I remain

> Yours in Christ,
> (Signed)  Father Vieron
> Nicholas L. Vieron
> Priest"

Complainant contends that the circularization by the defendant of the letter of Archbishop Iakovos or publication of same or its contents other than in defendant's church, as is directed by said letter, constitutes a libel to prevent which he is entitled to an injunction. Complainant contends that defendant was authorized and directed to read the letter of Archbishop Iakovos in Defendant's church only, and that the circulation of same or its contents elsewhere, as defendant has admittedly done, makes defendant's conduct libelous. Among other complaints on that score is the allegation that defendant has undertaken to prevent complainant from joining the Ministerial Association of Memphis by representing him to be unworthy of membership in that organization. Complainant applied for a temporary injunction which was denied, after which the cause came on for final hearing.

The Chancellor filed a written opinion, which is made part of the record, pursuant to which a final decree was entered denying complainant's prayer for an injunction and dismissing complainant's bill. The principal ground

for dismissing the bill, as stated by the Chancellor in said opinion, is that he considered the issues involved to turn or depend on determination of ecclesiastical questions, which on authority of Nance v. Busby, 91 Tenn. 303, 18 S.W. 874, 15 L.R.A. 801, are beyond the jurisdiction of the Chancery Court.

Complainant prayed and perfected an appeal from the decree of the Chancery Court dismissing his bill. In this Court, as appellant, he has filed one assignment of error, which is:

"The lower court erred in failing to grant appellant an injunction restraining the appellee from further libel and slander, and in dismissing his bill."

This presents a single question to be determined by this Court, which, as stated in appellant's brief is:

"There is but one question involved (the appellant having waived his claim for damages), and that is, as to whether he is entitled to an injunction restraining the appellee from libeling and slandering him."

The final decree in this cause was entered in the Chancery Court December 27, 1963, and an order noting complainant's exception to that decree and granting him an appeal was entered January 14, 1964. Along with complainant's original bill, what purports to be a cost bond, being a bond form signed by complainant, by his attorney, but without any surety, had been filed. The order of January 14, 1964 grants to complainant an appeal on the pauper's oath, and a pauper's oath for appeal was filed the same day. On February 17, 1964, thirty four days later, however, complainant filed an appeal bond. No motion had been made in the lower court and none in this Court to dispauperize appellant;

but counsel for defendant contends that the appeal bond, having been filed more than thirty days after the appeal was granted, came too late and that complainant's appeal should be dismissed by this Court, because the cause involves a libel or slander suit, which cannot be brought or appealed on the pauper's oath. In support of this contention, he cites the case of Eden v. Celsor, 172 Tenn. 598, 113 S.W.(2d) 745. This case holds that, "Plaintiffs, who took pauper's oath instead of giving bond for costs, were not entitled either to maintain their libel action or to take appeal from judgment dismissing case." We think, however, that complainant, in the instant case, as appellant, should not be put to any worse situation than he would have been in, if defendant had moved to dispauperize him and the bond voluntarily filed by complainant February 17, 1964 had been filed in response to such motion. That being our view of the situation, we will consider complainant's appeal on its merits.

In support of complainant's contentions, as set out in his Assignment of Error and Brief, counsel for complainant cites and relies on the following quotation from Gibson's Suits in Chancery (5th Ed.), sec. 865, which says:

"* * * where a person * * * *so exercises his own rights, as to irreparably injure another;* and * * * where personal rights are so *wantonly invaded* as to work great *discomfort,* inconvenience or *annoyance to complainant,* such as acts endangering life or limb, or injuring health, and *acts that tend to mortify complainant's* feelings, by publications and the like will be enjoined." (Emphasis added by counsel.)

He also quotes from Wise v. McCanless, 183 Tenn. 107, 108, 115, 191 S.W.(2d) 169, which in turn quotes from

the 3rd edition of Gibson's Suits in Chancery, as follows:

"In the opening paragraph of his chapter entitled 'In What Cases Injunction Will Be Granted' Mr. Gibson thus broadly states the rule:

" 'The various cases in which Chancery Court will interfere by injunction are almost as numerous as the matters which fall within its equitable jurisdiction; but it may be laid down as a fundamental rule, applicable to all cases, that, wherever a legal or equitable right exists, whether arising from contract, from the legal or equitable ownership of property, *or otherwise, the violation of that right will be enjoined on proper application to the Chancery Court,* unless the legal remedy of compensatory damages would be full, adequate and complete.' Gibson's Suits in Chancery (3d Ed.) sec. 80." (Emphasis added by counsel.)

Counsel for complainant also quotes from Weaver v. Davidson County, 104 Tenn. 315, 320, 59 S.W. 1105, as follows:

"It is a fundamental rule of equity that wherever a legal or equitable right exists, whether arising from contract, from legal or equitable ownership of property, *or otherwise, the violation of that right will be enjoined on proper application to the chancery court,* unless the legal remedy is full, adequate, and complete. 3 Pom.Eq.Jur. sec. 1369; Gib. Suits in Ch., secs. 46, 786." (Emphasis added by counsel.)

Neither of these quotations is applicable to the facts of the instant case The injunction involved in Wise v. McCanless was against enforcement of a regulation of the Commissioner of Finance and Taxation relating to operation of liquor stores, and that in Weaver v. David-

son County was against enforcement of an unconstitutional law known as the Estes Fee Bill. No authority has been presented by counsel for complainant where a tort, independent of property or contractual rights was enjoined, and in the only Tennessee case which has been called to our attention, Kivett v. Nevils, 190 Tenn. 12, 27 S.W.(2d) 39, where an injunction was applied for in connection with libel or slander, it was denied.

The general rule as stated in 28 Am. Jur.—Injunctions—Sec. 132, page 630, is:

"Equity does not have jurisdiction to act for the sole purpose of restraining the utterance of a libel or slander, regardless of whether the defamation is personal or relates to a property right."

More specifically, in 28 Am.Jur. — Injunctions—Sec. 133, page 631-632, it says:

"It is clearly established by the large majority of cases that in the absence of some independent ground for the invocation of equitable jurisdiction, equity will not grant an injunction restraining the publication of matter defaming the plaintiff personally, as distinguished from his property interests. It is not altogether clear whether the rule is based on the theory that the court is without power to grant injunction, or whether, because of policy considerations, the power will not be exercised. In any case, the ordinary rules that the propriety of such action in a particular case should be left to the judicial discretion of the court and that the power should be exercised reluctantly and with great caution, are applicable. In a few cases, the courts have exercised the injunctive power to restrain the publication of personal defamations, usually where

libel or slander was merely an incident of a larger situation held to present a proper case for intervention of equity. The principal grounds for equity's reluctance to extend its operations to this field are the traditional limitation of equitable jurisdiction to the protection of property rights, and the fear that to grant such relief will violate the constitutional rights of freedom of speech and press and of trial by jury. In some cases the person seeking injunctive relief against personal libels has sought to evade the effect of the general rule denying equitable relief in such cases by claiming that the defendant's conduct also damaged property rights. Such attempts have usually been unsuccessful. Some courts have taken the view that even where property rights are threatened by publication of matters personally defaming the plaintiff, equity will not interfere unless the property damage results from acts of illegal conspiracy or coercion. Relief has also been denied on the ground of adequacy of the legal remedies of actions for damages or by criminal prosecution.''

On the subject of the constitutional right of equity courts to enjoin the publication of libels, we quote from 11 Am.Jur.—Constitutional Law—Sec. 322, page 1117, as follows:

''Not only is the freedom of speech and of the press protected from enfringement by the legislative department, but it is also safeguarded from judicial abridgement. An essential element of the liberty of the press is its freedom from all censorship over what shall be published and exemption from control in advance, as to what shall appear in print. Consequently, it has been asserted that the right of freedom of speech and the press cannot coexist with the idea of preventing

such freedom of speech or of the press by injunction. Thus the right to boycott has been asserted and under the constitutional guaranty of freedom of speech and of the press, and an instance is given where the authority to enjoin persons from exercising freedom of speech peaceably in assistance of a boycott has been vigorously denied. The general rule as to boycott, however, is to the contrary and it is now generally held that the right to institute and maintain a boycott cannot be supported under this constitutional guaranty and that no unconstitutional interference with the freedom of speech is effected by enjoining a boycott where such injunction is limited to acts of commission and does not seek to enjoin the publication of a mere libel. *The general rule denying the right of the judiciary to enjoin a libel has been applied even though the libel tended to interfere with the administration of justice and to deprive an accused person of a fair trial;* and it has been held that the court has no power to prohibit the publication of the testimony of the witnesses in a pending case, where the evidence is not obscene." (Emphasis added).

On this phase of the case, the learned Chancellor, in his opinion, cites and relies on the United States Supreme Court case, Kedroff, et al. v. St. Nicholas Cathedral of the Russian Orthodox Church in North America, 344 U.S. 94, 73 S.Ct. 143, 97 L.Ed. 120.

The Tennessee case of Kivett v. Nevils, 190 Tenn. 12, 227 S.W.(2d) 39 was filed in the Chancery Court as a bill *quia timet;* but an injunction was denied in that case, and the Supreme Court, in an opinion written by Mr. Justice Gailor held,

"For the reason that the complainant has a plain, speedy, and complete remedy at law, the Chancellor was correct in sustaining the demurrer and dismissing the bill, and his decree is affirmed."

In the instant case, we think complainant's remedy, if any, is by means of a suit at law.

It is, therefore, our opinion, independent of whether or not a theological question is necessarily involved in this cause, on which ground the Chancellor rested his opinion denying an injunction and dismissing complainant's bill, that his decree to that effect must be affirmed and appellant's assignment of error overruled. It is the contention of counsel for complainant that the theological question is not an issue in this litigation, and that, since defendant, in his answer, admits publication of the letter complained of, injunction against further publication of same should be granted. We cannot agree with this contention. In the case of Nance v. Busby, 91 Tenn. 303, 18 S.W. 874, 15 L.R.A. 801, the Supreme Court of Tennessee, in an opinion written by Mr. Justice Lurton, later an Associate Justice of the Supreme Court of the United States, held that the courts of this State are without jurisdiction to enquire into or supervise the decisions or actions of religious organizations, and that a member of such organization who had been excommunicated was without remedy in the State courts, even if he had been wrongfully excommunicated. We think that principle is applicable to the facts of the instant case, and the fact that complainant has been unfrocked by the Greek Orthodox Church, of which he was formerly a member and priest, is completely analogous to that of a member having been excommunicated. In order to determine whether or not defendant was within his rights and

justified in publishing and circulating the letter announcing that defendant had been unfrocked, and, therefore, whether or not defendant is or was guilty of any libel or slander of complainant, it would be necessary to pass on the ecclesiastical actions and decisions of the Greek Orthodox Church; and this the courts of Tennessee are without power to do. In particular, the questions of whether or not the statements made by defendant are true and whether or not such statements are privileged must, in the last analysis, depend on the validity or correctness of decisions of the Greek Orthodox Church. Our conclusion is fortified by the circumstance that no bill of exceptions was filed in the instant case. No error on the technical record having been shown, it follows that the Chancellor's decree must be conclusively presumed to be correct. Freeman v. Felts, 208 Tenn. 201, 211, 344 S.W.(2d) 550; Freeman v. Freeman, 197 Tenn. 75, 270 S.W.(2d) 364; Spivey v. Reasonover, 191 Tenn. 350, 233 S.W.(2d) 555; and numerous other cases. We, therefore, concur in the reasoning and decision of the Chancellor denying an injunction to complainant and dismissing his bill on that ground, as well as for the other reasons hereinabove stated.

It results that complainant's assignment of error will be overruled and the decree of the Chancery Court of Shelby County will be affirmed. The costs of the cause are adjudged against the complainant, Theodore S. Kyritsis, and his surety on the appeal bond.

Carney, J., and McLemore, Special Judge, concur.