IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 8, 2022 Session

## MICKELL LOWERY v. MICHAEL REDMOND ET AL.

Appeal from the Chancery Court for Shelby County
No. CH-17-1580     JoeDae L. Jenkins, Chancellor

_____

### No. W2021-00611-COA-R3-CV
_____

Petitioner/Appellee filed a petition in chancery court against Respondents/Appellants, alleging various claims related to allegedly false and defamatory statements made by the Respondents/Appellants. An objection was made to the chancery court's subject matter jurisdiction, seeking dismissal or transfer of the action to circuit court. The chancery court denied the motion to dismiss or transfer and ultimately rendered judgment in favor of Petitioner/Appellee. We conclude that the chancery court lacked subject matter jurisdiction. We therefore reverse the judgment of the chancery court regarding subject matter jurisdiction, vacate all other orders of judgment entered by the trial court, and remand the case for transfer to circuit court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part and Vacated in Part and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which KENNY ARMSTRONG, and CARMA DENNIS MCGEE, JJ., joined.

Stuart Breakstone and Adrian Vivar-Alcalde, Memphis, Tennessee, for the appellants, Michael Redmond and Cora Redmond.

Tannera G. Gibson and Patrick J. Hillard, Memphis, Tennessee, for the appellee, Mickell Lowery.

## OPINION

### I. [1]

_____

[1] This case involves a lengthy procedural history. We will only discuss the events material to our holding in this appeal, and the operative events will be covered in further detail in section III, *infra*.

According to Petitioner/Appellee Mickell Lowery ("Appellee"), Respondents/Appellants Cora and Michael Redmond ("Appellants") defamed his character in an attempt to ensure that he would not succeed in his bid for election to public office, by distributing defamatory information about him to prospective voters. Consequently, Appellee filed a "Petition for Defamation" against Appellants on October 27, 2017 in Shelby County Chancery Court (the "trial court" or the "chancery court"). Therein, Appellee alleged tort claims for defamation, false light invasion of privacy, and intentional infliction of emotional distress ("IIED"); the petition sought both compensatory and punitive damages, as well as injunctive relief and attorney's fees. In his petition, Appellee further requested that should Appellants continue to distribute the allegedly defamatory information, they be fined $1,000.00 per distribution, found in contempt, imprisoned, and ordered to undergo psychological evaluation.

On October 30, 2017, the trial court issued a temporary restraining order in Appellee's favor. On November 21, 2017, Mrs. Redmond filed a motion to dismiss the action based on the trial court's lack of subject matter jurisdiction; in the alternative, the motion asked that the matter be transferred to circuit court.[2] On December 8, 2017, the trial court entered a consent order granting a temporary injunction against Appellants, relying in part on the parties' agreement to continue the temporary restraining order already in place. On September 6, 2018, Appellee filed an "Amended Petition for Defamation, Declaratory Judgment and Injunctive Relief." Therein, Appellee added a count seeking declaratory judgment—specifically, that Appellants had violated Tennessee Code Annotated sections 2-19-116(a) and 2-19-142 "and other relevant and applicable Tennessee statutory election laws." Appellee also filed a separate petition for injunctive relief in the trial court on November 4, 2019 related to the subject matter of his tort claims, in addition to various contempt petitions, along with at least one more request for attorney's fees.

The trial court apparently entered another a temporary restraining order on November 4, 2019, which enjoined Appellants from distributing certain material about Appellee. The trial court then granted Appellee's requests for injunctive relief in an initial order entered on November 25, 2019, an amended order entered on January 24, 2020, and a second amended order entered on February 7, 2020. The trial court denied the motion to dismiss or transfer the action in a separate order entered February 7, 2020.

On May 6, 2021, the trial court entered written orders that included the following findings: Appellants were liable for defamation; Mr. Redmond was liable for false light invasion of privacy; Appellants were not liable for IIED; Appellants violated sections 2-

---

[2] The objection to subject matter jurisdiction was filed solely on behalf of Mrs. Redmond. Later, however, Mrs. Redmond's attorney also began to represent Mr. Redmond. When the trial court denied the motion to dismiss or transfer on the basis of lack of subject matter jurisdiction, it treated the request as having been filed on behalf of both Mrs. and Mr. Redmond. No issue has been raised as to the trial court's decision to treat the objection to subject matter jurisdiction as joint.

19-116(a) and 2-19-142; and Mr. Redmond was in criminal contempt. The trial court ordered Appellants to pay $10,000.00 in actual damages and $10,000.00 in punitive damages to Appellee, and ordered Mr. Redmond to remove certain information he had posted on the Internet, serve three days in jail, and pay a $2,525.00 fine.

Appellants filed this appeal on June 4, 2021.

## II.

Appellants raise various issues, but we conclude that the question of the trial court's subject matter jurisdiction is dispositive of this appeal. On this issue, this Court has previously explained as follows:

> The concept of subject matter jurisdiction involves a court's power to adjudicate a particular type of controversy. Courts derive their subject matter jurisdiction from the Constitution of Tennessee or from legislative act, and cannot exercise jurisdictional powers that have not been conferred directly on them expressly or by necessary implication.
>
> A court's subject matter jurisdiction in a particular circumstance depends on the nature of the cause of action and the relief sought. It does not depend on the conduct or agreement of the parties, and thus the parties cannot confer subject matter jurisdiction on a trial or an appellate court by appearance, plea, consent, silence, or waiver.
>
> Judgments or orders entered by courts without subject matter jurisdiction are void. The lack of subject matter jurisdiction is so fundamental that it requires dismissal whenever it is raised and demonstrated.
>
> Thus, when an appellate court determines that a trial court lacked subject matter jurisdiction, it must vacate the judgment and dismiss the case without reaching the merits of the appeal.

*Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999) (internal citations omitted); *see also* Tenn. R. Civ. P. 12.08.

"Since a determination of whether subject matter jurisdiction exists is a question of law, our standard of review is de novo, without a presumption of correctness." *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712–13 (Tenn. 2012) (citation and internal quotation marks omitted).

## III.

In the trial court's order denying the motion to dismiss or to transfer the case due to lack of subject matter jurisdiction, the court stated that it "believe[d] that it ha[d] jurisdiction to issue the injunctive relief requested to enjoin [Appellants] from seeking to

disseminate false information pursuant to [sections] 2-19-116 and 2-19-142."[3] The trial court further relied on caselaw stating that if a chancery court has jurisdiction over any part of a controversy, it can assert jurisdiction over other portions of the controversy that it would normally not have jurisdiction to decide.

Appellants argue in part that the trial court lacked jurisdiction pursuant to section 16-11-102, which states as follows:

> (a) The chancery court has concurrent jurisdiction, with the circuit court, of all civil causes of action, triable in the circuit court, *except for unliquidated damages for injuries to person or character*, and except for unliquidated damages for injuries to property not resulting from a breach of oral or written contract; and no demurrer for want of jurisdiction of the cause of action shall be sustained in the chancery court, except in the cases excepted.

> (b) Any suit in the nature of the cases excepted in subsection (a) brought in the chancery court, where objection has not been taken by a plea to the jurisdiction, may be transferred to the circuit court of the county, or heard and determined by the chancery court upon the principles of a court of law.

(Emphasis added). Accordingly, Appellants aver that because they objected to the trial court's jurisdiction, and Appellee's original defamation petition sought unliquidated damages for injuries to person or character, the trial court should have transferred the case to circuit court. Appellants further argue, inter alia, that while Appellee sought equitable relief in the form of injunctive relief and a declaratory judgment, those forms of relief are incidental to the main subject of this cause—the defamation claim—over which the trial court does not have jurisdiction. Furthermore, Appellants note that this case does not involve an election contest, so Tennessee Code Annotated section 2-17-101 does not confer jurisdiction upon the trial court.[4]

Appellee concedes that the chancery court does not have subject matter jurisdiction over causes of action solely for unliquidated damages for injuries to person or character. However, he argues that the trial court had jurisdiction over his claims for injunctive and declaratory relief and the portion involving liquidated damages, and thus the trial court also had jurisdiction to adjudicate his remaining claims. Appellee asserts that the portion of his

---

[3] These two statutes will be discussed in further detail, *infra*.

[4] Section 2-17-101 states, in relevant part: "Except as otherwise expressly provided in this chapter, election contests shall be tried in the chancery court of the division in which the defendant resides." Tenn. Code Ann. § 2-17-101(a). At the trial level, Appellee argued that the trial court had subject matter jurisdiction based on, inter alia, section 2-17-101(a), because he was seeking relief in relation to an election matter (he was running for elected office and alleged that Appellants were trying to interfere with his election by defaming him). Appellee appears to have abandoned this argument on appeal, likely because it lacks merit, given that this case is not an election contest. *See **id.***

- 4 -

claim involving liquidated damages is the $50.00 fine imposed on Class C misdemeanors, which Appellee alleges Appellants committed by violating sections 2-19-116 and 2-19-142. *See* Tenn. Code Ann. § 40-35-111 (providing for a fine of $50.00 or thirty days in jail for Class C misdemeanors). Appellee further relies on section 16-11-103, which confers on chancery courts "exclusive original jurisdiction of all cases of an equitable nature, where the debt or demand exceeds fifty dollars ($50.00)."

For purposes of determining whether the trial court had subject matter jurisdiction in this case, we look to Appellee's amended complaint. *See **Bowers v. Est. of Mounger***, 542 S.W.3d 470, 480–81 (Tenn. Ct. App. 2017) ("Even if a question of subject matter jurisdiction were implicated, however, when the original complaint is subsequently amended, as was accomplished in the case at bar, such amended complaint becomes the operative pleading, which the court must review for jurisdictional purposes."). Appellee's amended complaint included causes of action for defamation, false light invasion of privacy, IIED, injunctive relief, and declaratory judgment. The parties do not appear to dispute that the chancery court does not have subject matter jurisdiction over Appellee's three tort claims, because they seek unliquidated damages for injuries to person or character. *See* Tenn. Code Ann. § 16-11-102(a). And because Appellants objected to the chancery court's jurisdiction over Appellee's tort claims, transfer to circuit court would normally be mandated. *See* Tenn. Code Ann. § 16-11-102(b); ***Flowers v. Dyer Cnty., Tenn.***, 830 S.W.2d 51, 53 (Tenn. 1992) (citing ***Muse v. Sluder***, 600 S.W.2d 237 (Tenn. Ct. App. 1980)) ("Implicit in the provisions of [section] 16-11-102 is the positive inference that, where a jurisdictional objection has been made [in the case of suits for unliquidated damages for injuries to person or character], such a transfer [to circuit court] is mandated.").

Therefore, we are left with the task of deciding if Appellee is correct that his injunctive and declaratory relief claims vest the trial court with subject matter jurisdiction, so the trial court consequently may take jurisdiction of the tort claims. We will address the injunctive and declaratory judgment actions in turn.

**A. Claim for injunctive relief**

In arguing that his injunctive relief claim provides a basis for the trial court's subject matter jurisdiction, Appellee appears to assume that chancery courts always have jurisdiction to issue injunctions. He then relies on caselaw stating that "when the Chancery Court takes jurisdiction for one purpose it takes jurisdiction for all purposes which includes civil causes of action for injuries to person, property or character involving unliquidated damages." ***Bryson v. Bramlett***, 321 S.W.2d 555, 557 (Tenn. 1958).

First, we note that it is not entirely clear that the trial court in fact had jurisdiction to enjoin the alleged defamatory behavior here. Recently, we explained that the traditional rule has been that "equity does not enjoin a libel or slander and that the only remedy for

- 5 -

defamation is an action for damages." ***In re Conservatorship of Turner***, No. M2013-01665-COA-R3-CV, 2014 WL 1901115, at *9 (Tenn. Ct. App. May 9, 2014) (affirming an injunction on speech issued by a circuit court). As more fully explained in ***Kyritsis v. Vieron***, 53 Tenn. App. 336, 382 S.W.2d 553 (Tenn. Ct. App. 1964),

> The general rule . . . is: "Equity does not have jurisdiction to act for the sole purpose of restraining the utterance of a libel or slander, regardless of whether the defamation is personal or relates to a property right. . . . It is clearly established by the large majority of cases that in the absence of some independent ground for the invocation of equitable jurisdiction, equity will not grant an injunction restraining the publication of matter defaming the plaintiff personally, as distinguished from his property interests."

***Id.*** at 345 (quoting 28 Am. Jur.—Injunctions §§ 132–33). *But see **In re Conservatorship of Turner***, 2014 WL 1901115, at *10 (collecting cases) ("There have, however, been a number of inroads made on the broad rule against injunctions to enjoin defamatory statements."). Thus, it is unclear whether Tennessee law provides that a request for an injunction enjoining speech is clearly sufficient to invoke the chancery court's jurisdiction.

However, even assuming, arguendo, that the trial court would have had jurisdiction to adjudicate Appellee's injunctive relief claim, that does not in turn confer subject matter jurisdiction upon the trial court to adjudicate Appellee's tort claims. Appellee is correct that "[i]t is sometimes broadly stated that when a chancery court has jurisdiction for one purpose, it will take jurisdiction for all purposes; but this means all purposes *incidental* to its jurisdiction of the main subject." ***Vaughn v. Odom***, No. 43, 1988 WL 15711, at *2 (Tenn. Ct. App. Feb. 25, 1988) (emphasis added) (internal quotation marks omitted) (quoting ***Tucker v. Simmons***, 287 S.W.2d 19, 21 (Tenn. 1956)). In the Tennessee cases stating "that Chancery takes jurisdiction of matters . . . when they are incidental to the main subject[, t]he inference clearly is . . . that if the main thing involved in the lawsuit is not of an equitable nature such as the equity court has given jurisdiction[,] then courts of equity will not take jurisdiction." ***Tucker***, 287 S.W.2d at 20–21. In other words, the gravamen of the lawsuit must afford the chancery court subject matter jurisdiction—only then can the chancery court take jurisdiction for all other incidental purposes. *See **id.*** (internal citation omitted) ("Obviously the reason for this lawsuit and the gravamen of the lawsuit . . . was for the purpose of securing unliquidated damages for the injury that this woman received. This being true the Chancellor exercising his discretion and dismissed the suit because the main subject was a law cause and the equitable right was merely incidental[.]"); *see also **Carter v. Slatery***, No. M2015-00554-COA-R3-CV, 2016 WL 1268110, at *3 (Tenn. Ct. App. Feb. 19, 2016) ("When a court's subject matter jurisdiction is questioned, the first step is to ascertain the nature or gravamen of the case."); *cf. **Bishof v. Yarbrough Const. Co.***, No. 02A01-9411-CH-00256, 1996 WL 490629, at *13 (Tenn. Ct. App. Aug. 29, 1996) (internal citation omitted) ("[C]hancery courts have both statutory and inherent jurisdiction involving suits for rescission. As we believe the reason for this lawsuit and the gravamen

of this lawsuit, as stated in the [] Complaint, is for rescission of the underlying contract, we hold that the trial court erred in dismissing the [] claim due to lack of jurisdiction.").

One of the cases cited by Appellee tends to bear this out. For example, in ***Bryson v. Bramlett***, a borrower brought a proceeding to recover usury paid and damages for "having been harassed by a multiplicity of garnishments which caused him to lose much time from work and to incur considerable counsel fees in endeavoring to get the garnishments released." 321 S.W.2d at 349. This was an action in the nature of replevin. *See Black's Law Dictionary* 1413 (9th ed. 2009) (defining "replevin" as "1. An action for the repossession of personal property wrongfully taken or detained by the defendant, whereby the plaintiff gives security for and holds the property until the court decides who owns it" and "2. A writ obtained from a court authorizing the retaking of personal property wrongfully taken or detained."). Replevin is a legal, not an equitable, remedy. *See* Samuel L. Bray, *The System of Equitable Remedies*, 63 UCLA L. Rev. 530, 593 n. 137 (2016) ("Mandamus, habeas, replevin, and ejectment are clearly legal remedies."). However, replevin is also an action for liquidated damages, because it seeks damages in a specific, ascertainable sum. *See **Arco Co. v. Garner & Co.***, 143 Tenn. 262, 227 S.W. 1025, 1026 (1921) (citation and internal quotation marks omitted) (defining "liquidated damages" as "[d]amages, the amount of which has been determined by anticipatory agreement between the parties. Damages for a specific sum, stipulated or agreed upon as a part of a contract as the amount to be paid to a party who alleges and proves a breach of it."); *cf. **id.*** (citation and internal quotation marks omitted) (defining "unliquidated damages" as "such damages as have not been ascertained or fixed by contract."). Therefore, because the chancery court had jurisdiction over the action for liquidated damages, it had incidental subject matter jurisdiction to award punitive damages. *See **Bryson***, 204 Tenn. at 351; *cf. **Budget Rent-A-Car of Knoxville, Inc. v. Car Servs., Inc.***, 469 S.W.2d 360, 362 (Tenn. 1971) (citing ***Union Planters' Bank & Tr. Co. v. Memphis Hotel Co.***, 139 S.W. 715 (Tenn. 1911); ***Tucker***, 287 S.W.2d 19) ("All the defendants insist that the Chancery Court is without jurisdiction of the suit because it is one for unliquidated damages resulting from tort. The complainants on the other hand argue that because injunctive relief is sought the court takes jurisdiction for all purposes. With this we cannot agree. The ground for the injunction failed and with it failed also the only ground on which the jurisdiction of the Chancery Court is asserted.").

Here, we must conclude that Appellee's claim for an injunction is merely incidental to his claim for damages related to various reputational torts. In general, a claim is incidental when it is "subordinate to some other" claim. *Incidental to*, *Garner's Dictionary of Legal Usage* 438 (3rd ed. 2011). The gravamen of the suit is clearly in the nature of defamation. First, although we ultimately look to the amended petition for purposes of determining jurisdiction, for purposes of determining which claim is incidental, the initial petition filed in this case is rather telling: it was titled a "Petition for Defamation," indicating that the claims to reputational damage were the main thing asserted. This fact did not change after the amended petition was filed—Appellee still took issue with the statements Appellants published about him, and this allegedly defamatory conduct is the

basis of Appellee's tort and injunctive relief claims. The request for injunctive relief—that Appellants be required to stop making allegedly defamatory and damaging statements—is merely incidental to Appellee's claims surrounding defamation. Thus, the trial court could not assume subject matter jurisdiction over the tort claims by way of the injunctive claim, even if it would have had jurisdiction over the injunctive claim alone. *See Tucker*, 287 S.W.2d at 20–21.[5] Similarly, in *Kyritsis*, an injunction was sought to enjoin tortious libel and slander, independent of property or contractual rights. *See Kyritsis*, 382 S.W.2d at 556–57, 558. This Court rejected the notion that such a claim was necessarily sufficient to confer subject matter jurisdiction on the chancery court. *See id.* Rather, the Court explained, "'[i]n a few cases, the courts have exercised the injunctive power to restrain the publication of personal defamations, usually where libel or slander was merely an *incident* of a larger situation held to present a proper case for intervention of equity.'" *Id.* at 557 (emphasis added) (quoting 28 Am. Jur.–Injunctions–Sec. 132, page 631–632). The injunctive relief requested here, as incidental to claims for non-equitable relief, was therefore not sufficient to serve as a basis for the trial court's subject matter jurisdiction.[6]

## B. Claim for declaratory judgment

Appellee has one final claim that he asserts confers subject matter jurisdiction on the trial court: his claim for declaratory judgment related to certain election statutes. We need not reach the issue of whether Appellee's declaratory judgment action could be a basis

---

[5] In some cases, Tennessee courts have suggested that the injunction or some other equitable request for relief was the "main thing" requested by the plaintiff and that subject matter jurisdiction was conferred on the chancery court therefrom to award unliquidated damages. *See, e.g.*, *Union Planters' Bank & Tr. Co.* 139 S.W. at 719 (citing *Richi v. Chattanooga Brewing Co.*, 58 S. W. 646 (Tenn. 1900)) ("Chapter 97 of the Acts of 1877 excepts from the jurisdiction of the chancery court cases of injury to property involving unliquidated damages. The chancery court obviously would have had no jurisdiction to determine this claim for damages, had it been presented alone. Such jurisdiction could have been acquired only as an incident to the main relief sought, to wit, the injunction. Taking jurisdiction for the purpose of injunction, the chancery court could have determined the entire controversy."); *Richi*, 58 S.W. at 646 (citations omitted) ("[I]t is equally well established that a court of equity, having taken jurisdiction of the cause for the purpose of injunction, or to restrain and abate the nuisance, may decide the whole controversy; its jurisdiction to award damages being incidental to its jurisdiction of the main subject."); *Indus. Dev. Bd. of City of Tullahoma v. Hancock*, 901 S.W.2d 382, 384 (Tenn. Ct. App. 1995) (explaining that "[w]hen a court of chancery takes jurisdiction of a case under its inherent jurisdiction"—in this case, a complaint seeking two "inherently equitable" remedies, to remove cloud on property title and enjoin the defendant from asserting property claims—"it may decide all issues involved in the matter," including a tort action involving unliquidated damages); *cf. Pruitt v. Talentino*, 464 S.W.2d 294, 294 (Tenn. Ct. App. 1970) (allowing a chancery court to award damages and an injunction upon finding that defendants had trespassed upon and damaged the plaintiffs' property, because "the chancery court had jurisdiction in this case under the application for an injunction and where the chancery court has obtained jurisdiction over some portion or feature of a controversy it may grant full relief in the same manner as could a court of law."). Our review of Appellee's amended petition leads to the opposite conclusion in this case.

[6] This holding applies to both the claims for injunctive relief that were included in Appellee's amended petition and in separate pleadings filed in this case.

for affording the trial court subject matter jurisdiction over this case, however, because it fails for another reason: Appellee sought declaratory judgment under statutes for which there exist no private rights of action. Therefore, Appellee could not bring his declaratory judgment action in any court.

"A private right of action is the right of an individual to bring suit to remedy or prevent an injury that results from another party's actual or threatened violation of a legal requirement." ***Hardy v. Tournament Players Club at Southwind, Inc.***, 513 S.W.3d 427, 433 (Tenn. 2017) (footnote and citation omitted). "Some statutes provide a private remedy by their express terms; others define legal duties and 'are silent about whether an individual may bring suit to enforce them.'" ***Id.*** (citation omitted). When a statute does not expressly provide a private right of action, no private right of action can be implied, pursuant to Tennessee Code Annotated section 1-3-119,[7] which states in pertinent part as follows:

> (a) In order for legislation enacted by the general assembly to create or confer a private right of action, the legislation must contain express language creating or conferring the right.

> (b) In the absence of the express language required by subsection (a), no court of this state, licensing board or administrative agency shall construe or interpret a statute to impliedly create or confer a private right of action except as otherwise provided in this section.

> (c) Nothing in this section shall be construed in any way to impair the ability of a court to:

> (1) Recognize a private right of action that was recognized before July 1, 2012, by the courts of this state as arising under a statute, unless the statute is amended after July 1, 2012, to expressly bar the private right of action[.]

"[T]he plaintiff bears the burden of establishing the existence of a private right of action." ***Hardy***, 513 S.W.3d at 434 (citation omitted). "The determination of whether a statute creates a private right of action is a matter of statutory construction." ***Morrison v. City of Bolivar***, No. W2011-01874-COA-R9-CV, 2012 WL 2151480, at *5 (Tenn. Ct. App. June 14, 2012) (citation and footnote omitted). We review issues of statutory construction de novo, with no presumption of correctness as to the trial court's treatment of the issue. *See* ***State v. Welch***, 595 S.W.3d 615, 621 (Tenn. 2020).

Here, Appellee sought to assert a private right of action under sections 2-19-116 and

---

[7] Before section 1-3-119 was enacted, courts would have to engage in analysis of various factors to "determine whether a private right of action [wa]s implicitly available" in a statute. ***Morrison v. City of Bolivar***, No. W2011-01874-COA-R9-CV, 2012 WL 2151480, at *6 n.4 (Tenn. Ct. App. June 14, 2012).

2-19-142. Section 2-19-116 states as follows:

> (a) No person shall print or cause to be printed or assist in the distribution or transportation of any facsimile of an official ballot, any unofficial sample ballot, writing, pamphlet, paper, photograph or other printed material which contains the endorsement of a particular candidate, group of candidates or proposition by an organization, group, candidate or other individual, whether existent or not, with the intent that the person receiving such printed material mistakenly believe that the endorsement of such candidate, candidates or proposition was made by an organization, group, candidate or entity other than the one or ones appearing on the printed material.

> (b) A violation of this section is a Class C misdemeanor.

Section 2-19-142 states that

> [i]t is a Class C misdemeanor for any person to publish or distribute or cause to be published or distributed any campaign literature in opposition to any candidate in any election if such person knows that any such statement, charge, allegation, or other matter contained therein with respect to such candidate is false.

Each of these statutes thus prescribes a criminal penalty. *See also **Tennesseans for Sensible Election L. v. Slatery***, No. M2020-01292-COA-R3-CV, 2021 WL 4621249, at *2 (Tenn. Ct. App. Oct. 7, 2021) ("Tenn. Code Ann. § 2-19-142 . . . criminalizes the publication of false statements opposing a political candidate."). And, more importantly, neither of these statutes expressly provides a private right of action, therefore prohibiting one from being implied. *See* Tenn. Code Ann. § 1-3-119.[8] Additionally, while section 1-3-119 does not prohibit courts from recognizing private rights of action in statutes when such rights of action were recognized by Tennessee courts before July 1, 2012, we have found no cases explicitly recognizing a private right of action under either section 2-19-116 or

---

[8] We note that in a recent Tennessee Supreme Court decision, the court analyzed whether a statute implied a private right of action without addressing or citing section 1-3-119. *See generally **Affordable Constr. Servs., Inc. v. Auto-Owners Ins. Co.***, 621 S.W.3d 693 (Tenn. 2021). Still, the court concluded that there was no implied private right of action in the statute at issue because it was a regulatory statute enforced by governmental remedies, and "[c]ourts have generally declined to imply a private right of action" in such statutes. *Id.* at 698, 700 (citations omitted). *See also **Brown v. Tennessee Title Loans, Inc.***, 328 S.W.3d 850, 860 (Tenn. 2010) ("The courts of this state have refused to imply a private right of action in regulatory statutes enforced through governmental remedies."). Here, the same is true: sections 2-19-116 and 2-19-142 are enforced by governmental remedy—violations of each statute constitute misdemeanors. *See id.* at 700 (citations omitted) ("[A] party who violates this section may be guilty of a misdemeanor. Thus, [this] section [] is a 'regulatory statute enforced through governmental remedies[.]'"). Additionally, none of the parties in ***Affordable Construction Services, Inc.***, raised section 1-3-119 in their appellate briefs, which may explain its omission from the court's analysis in that case.

section 2-19-142 before July 1, 2012. Nor has Appellee pointed to any such cases either in the trial court or in this appeal. *See Hardy*, 513 S.W.3d at 434 (placing the burden to show that a statute can be privately enforced on the party asserting that it can be).

Consequently, Appellee cannot assert a private right of action, by way of a declaratory judgment action or otherwise, under sections 2-19-116 or 2-19-142. *See Tennessee Firearms Ass'n v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2016-01782-COA-R3-CV, 2017 WL 2590209, at *9 n.7 (Tenn. Ct. App. June 15, 2017) (internal citations omitted) (quoting *Michigan Corr. Org. v. Michigan Dep't of Corr.*, 774 F.3d 895, 907 (6th Cir. 2014)) ("[T]he absence of a private right of action 'stops [the] declaratory judgment action in its tracks. No private right of action means no underlying lawsuit' and 'no declaratory relief.'").

"Likewise, in Tennessee, our supreme court has held that 'the Declaratory Judgment Act has not given the courts jurisdiction over any controversy that would not be within their jurisdiction if affirmative relief were being sought.'" *Carter*, 2016 WL 1268110, at *6 (quoting *Hill v. Beeler*, 286 S.W.2d 868, 871 (Tenn. 1956)). "Simply put, 'the Declaratory Judgment Act does not confer an independent basis for jurisdiction.'" *Id.* (quoting *Batts v. Lack*, No. 86-147-II, 1986 WL 13040, at *3 (Tenn. Ct. App. Nov. 21, 1986) (citing *Hill*, 286 S.W.2d at 871))). "Consequently, the Tennessee Supreme Court has held that '[a] declaratory judgment is proper in chancery, but only if chancery originally could have entertained a suit of the same subject matter.'" *Id.* (quoting *Zirkle v. City of Kingston*, 396 S.W.2d 356, 363 (citing *Gibson, Suits in Chancery* § 36, n.62 (5th ed. 1955))). "In *Zirkle*, for instance, the supreme court concluded that the chancery court did not have jurisdiction over any of the theories alleged in the complainants' suit, and therefore, it could not 'take jurisdiction to enter a declaratory judgment.'" *Id.* (quoting *Zirkle*, 396 S.W.2d at 363); *see also Zirkle*, 396 S.W.2d at 363 ("Since chancery does not have jurisdiction of the complainants' suit under any of their theories—injunction, unjust enrichment, conversion—it cannot take jurisdiction to enter a declaratory judgment."). Therefore, Appellee's declaratory judgment claim was likewise insufficient to confer subject matter jurisdiction on the trial court.

## C.

In sum, we conclude that Appellee has asserted no proper claim that could serve as the basis for the trial court's jurisdiction. Here, Appellee's claims for injunctive relief are incidental to his non-equitable claims. And to the extent that he argues that certain statutes confer jurisdiction, we conclude that these statutes fail to confer a private right of action to which the trial court's jurisdiction can attach. Without a proper basis for the exercise of jurisdiction, this case should have been transferred to circuit court. *See* Tenn. Code Ann. § 16-1-116 (governing transfers based on lack of subject matter jurisdiction). Therefore, the trial court's order denying the motion to dismiss or transfer the case to circuit court is reversed. And because the trial court's contempt findings stem from injunctions that were

not properly before the trial court, those, too, must be vacated, along with all remaining orders of judgment entered by the trial court.

## IV.

This cause is remanded to the trial court. The trial court is directed to transfer this case to the circuit court of the county for disposition. The costs on this appeal are taxed to Appellee Mickell Lowery, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE